UNITED STATES of America, Appellee,

v.

Leroy BOSTIC, Appellant.

UNITED STATES of America, Appellee,

v.

Albert Lewis JOHNSON, Appellant.

Nos. 82–2377, 82–2442.

United States Court of Appeals,
Eighth Circuit.

Submitted May 18, 1983.

Decided Aug. 8, 1983.

Rehearing and Rehearing En Banc
Denied Sept. 15, 1983.

**402**

Jack S. Nordby, Minneapolis, Minn., for Bostic.

Bruce H. Hanley, Minneapolis, Minn., for Johnson.

James M. Rosenbaum, U.S. Atty., Thomas B. Heffelfinger, Asst. U.S. Atty., D. Minn., Minneapolis, Minn., Kris Rasmussen, Legal Intern, for appellee.

Before ROSS, ARNOLD, and JOHN R. GIBSON, Circuit Judges.

ARNOLD, Circuit Judge.

Leroy Bostic and Albert Lewis Johnson were convicted by a jury of robbing a branch of the Twin City Federal Savings and Loan Association in Minneapolis, Minnesota, in violation of 18 U.S.C. § 2113(a) and (d). The District Court[1] sentenced Bostic to 20 years' imprisonment, and Johnson to 15. They appeal, claiming that their trial should have been severed from that of a co-defendant, Garry Monte Green, Jr. Green took the stand and testified that Bostic and Johnson forced him at gunpoint to help them carry out the robbery. We are inclined to agree that appellants' motions for severance should have been granted, but we nevertheless affirm their convictions. Our study of the transcript has persuaded us beyond a reasonable doubt that guilty verdicts would have been returned even if Bostic and Johnson had been given a severance from Green.

## I.

■ In order to obtain a new trial, Bostic and Johnson must show that they were prejudiced by the joinder with Green. It is entirely proper to charge two or more defendants together "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). This case meets that standard, and no one contends otherwise, so there is no issue of misjoinder in violation of Rule 8. The claim is, instead, that the joinder was prejudicial, and that the District Court should have granted a severance under Fed.R.Crim.P. 14.

In *United States v. Jackson,* 549 F.2d 517, 523 (8th Cir.), *cert. denied,* 430 U.S. 985, 97

1. The Hon. Robert G. Renner, United States District Judge for the District of Minnesota.

S.Ct. 1682, 52 L.Ed.2d 379 (1977), we set out the applicable standard as follows:

It is the general rule that persons charged in a conspiracy [2] should be tried together, particularly where proof of the charges against the defendants is based upon the same evidence and acts. Severance will be allowed upon a showing of real prejudice to an individual defendant. However, the motion to sever is addressed to the discretion of the trial court, and a denial of severance is not grounds for reversal unless clear prejudice and an abuse of discretion are shown.

(Citations omitted.) Prejudice must be "real" and "clear." Compare 1 Wright, *Federal Practice and Procedure* § 223, at 788 (2d ed. 1982) ("strong showing of prejudice" required). An abuse of discretion in refusing severance is not alone enough to justify reversal and a new trial. There must also be prejudice. That is, there must be some appreciable chance that defendants would not have been convicted had the separate trial they wanted been granted. There must be some appreciable chance that trying Bostic and Johnson again, but this time without Green as a co-defendant, would lead to some result other than another verdict of guilty.

We first discuss briefly the merits of the severance issue. The government asks us to adopt the Seventh Circuit rule that mutual antagonism between or among defendants requires a severance only if "the acceptance of one party's defense will preclude the acquittal of the other." *United States v. Ziperstein,* 601 F.2d 281, 285 (7th Cir.1979), *cert. denied,* 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980). If we were to agree with this statement of the law, it would still be difficult to approve the denial of a severance here. The demanding *Ziperstein* standard may well have been met by the unusual facts of this case. Green testified that Bostic and Johnson coerced him into helping them rob the bank. If the defense of coercion is accepted, Bostic and Johnson cannot be acquitted. The

innocence of Green carries with it, as a logical matter, the guilt of the two co-defendants whom Green now blames. The government suggests that the jury might have believed Green's testimony that he was coerced, but disbelieved his identification of Bostic and Johnson as the ones who did the coercing. That is a verbally tenable possibility, we suppose, but it seems so unlikely as to be negligible in the real world. The government also cites *United States v. Boyd,* 610 F.2d 521 (8th Cir.1979), *cert. denied,* 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980), where we held that severance was properly denied even though one defendant claimed that another had "brainwashed" her. *Boyd* may be of some help to the government here, but we doubt that the antagonism among defendants was quite so sharp there as it was at this trial.

We are inclined to think, therefore, that the inconsistency of defenses here—which became more and more clear as the trial wore on—should have produced a severance for Bostic and Johnson. It does not follow, though, that their convictions must be reversed. As we have explained, the question of prejudice remains to be considered. "Any error ... which does not affect substantial rights shall be disregarded." Fed. R.Crim.P. 52(a). See *United States v. Hasting,* —— U.S. ——, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983) ("[I]t is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations ....").

We have studied the entire record and are morally certain that the denial of severance did not affect the jury verdict against appellants. It is not that Green's testimony was unimpressive. At least one juror seems to have believed him, because the jury could not agree on a verdict as to Green. (He later pleaded guilty and was sentenced.) The dispositive point for us is the overwhelming strength of the government's evidence, wholly apart from Green's testimony.

---

2. There is no charge of conspiracy here, but defendants are charged with helping each other rob the same bank on the same day, and that is the same thing for present purposes.

This court still adheres to the practical wisdom offered by a former Chief Judge of the court, Judge Harvey Johnsen, in *Homan v. United States,* 279 F.2d 767, 771 (8th Cir.), *cert. denied,* 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88 (1960). He observed:

> Errors of the trial court which may be prejudicial in a close criminal case, in the sense of being capable in such a situation of possibly affecting the result, can well be without any such rational possibility in a strong case, and thus not entitle the defendant to a reversal of his conviction. The reviewing court must, of course, be able to say with fair assurance that the errors complained of could not, with natural operation in the total setting and proceedings had, be regarded as having possessed any influencing effect.

*United States v. Bledsoe,* 674 F.2d 647, 668 (8th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982).

Here, interlocking circumstances tie both Bostic and Johnson inexorably to the robbery. They were arrested about 11 minutes after the commission of the crime. A teller identified the shoes worn by Johnson at the time of the arrest as shoes that she had seen on the feet of one of the robbers. She had been forced to lie on her stomach on the floor, and the robber's feet were about three inches from her face. Two men were seen entering a car in the parking lot behind the bank immediately after the crime had taken place, and no more than six or seven minutes later a police officer identified Bostic, who was previously known to him, as the driver of a car closely matching the description of the car that had been seen behind the bank. After a high-speed chase, the car driven by Bostic struck a guardrail at the entrance to an alley and came to a halt. Two men ran from the car, and were almost immediately seen by a bystander, Joseph Trymucha, who also positively identified Bostic as one of the two men. Within seconds of the time the two men were seen running away by Trymucha, Bostic and Johnson were arrested behind a nearby apartment building. They were in the process of jumping down from a ledge when the arresting officer saw them. They did not live in the immediate area. Money was falling out of Johnson's left pants leg, and other bills were scattered on the ground nearby. A jacket found on the ground in the immediate vicinity had a bank customer's wallet in it. The customer, Patrick Michael Fleetham, testified that the wallet had been taken from him by the robbers. And a brown paper sack found in the car contained a wallet taken from another customer, Kathleen Haralson, as well as 15 bills known as "bait money," that is, bills whose serial numbers had been recorded in advance by bank employees for purposes of identification.

This evidence, together with other details that we have not set out at length, convinces us that exactly the same verdicts of guilty would have been returned had the District Court agreed to try Green separately. The evidence we have recounted was uncontradicted, and cross-examination by defense counsel, though skillful and extended, failed to shake the government's witnesses in any material respect. We conclude that the failure to grant a severance, if it was error, was harmless and cannot justify a reversal of these convictions for a new trial.

## II.

Defendants also argue that prejudicial error was committed when the trial court permitted witnesses who were present at the time of the robbery to testify, on the basis of the manner and content of the robbers' speech, that they believed the robbers were black. (Evidence of the robbers' race was relevant on the issue of identification. Bostic and Johnson are black.) There was no adequate foundation for this testimony, it is argued, since none of the witnesses was a linguistic expert. We agree that this kind of evidence should be regarded with care and circumspection. For one thing, as one of defense counsel remarked, "not all black people speak alike. There are some black people that speak like white people, or you can't tell the race just on the

basis of how they speak or their intonation ...'' (Tr.154). Perhaps an insufficient foundation was laid for this testimony, but we cannot agree that its admission necessitates a new trial in this case. First of all, as we have already indicated, the government's case was overwhelming, and there was other proper evidence in the record identifying, on the basis of skin color, at least one of the robbers as black. In addition, the District Court promptly and on its own motion admonished the jury not to consider any witness's opinion as to the race of the robbers based on voice intonations or content of speech. If there was any error here, it was completely cured by the District Court's thorough admonition to the jury.[3]

### III.

For the reasons given, we are convinced that defendants received a fair trial and that no error impaired their substantial rights. The judgments of conviction are therefore

Affirmed.

---

3. We have also considered and reject defendants' additional contention that they were prejudiced by the admission of evidence of other crimes.