**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David Samuel IREDIA,
Defendant–Appellant.**

No. 88–2261.

United States Court of Appeals,
Fifth Circuit.

Feb. 3, 1989.

Rehearing Denied March 1, 1989.

Jack B. Zimmermann, Jim E. Lavine, Houston, Tex., for defendant-appellant.

Richard Banks, Frances H. Stacy, Paula C. Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEE, HIGGINBOTHAM and DUHE, Circuit Judges.

PER CURIAM:

Defendant Minister David Iredia appeals from conviction on thirteen counts of violating 18 U.S.C. § 1029(a)(2) and (c)(1). We affirm.

## Background

The defendant-appellant, Minister David Iredia, was charged with eighteen counts of credit card fraud in violation of 18 U.S. C. § 1029(a) and (c)(1). Section 1029 provides penalties for "whoever knowingly and with intent to defraud produces, uses, or traffics in one or more counterfeit access devices...." *Id.* (a)(1). The government dismissed five of the counts before the trial, at which a jury convicted the defendant on all remaining counts. He was sentenced to six years in confinement on each of seven counts, these sentences to run concurrently. He was also sentenced to six years in confinement on the remaining six counts to run concurrently, but after completing the six year sentence for the eight counts. Execution of the sentence for the six counts was suspended for five years of probation. The court ordered restitution of approximately $45,000, fines of $91,000, and a special assessment of $650.

## Analysis

Iredia first contends that racial prejudice was injected into the trial through: 1) the testimony of Joseph Capasso, 2) the admission of certain documents, and 3) the identification of the appellant by at least eleven government witnesses as the "black man" or "the black with a Nigerian accent."

■ The identification of Iredia as a Nigerian first occurred when he was identified by a bank employee as the person who opened a certain account. He was later racially identified as the person who rented postal boxes under different aliases. However, if the identification on the basis of race is relevant to identification as the perpetrator, it is admissible. *United States v. Bostic*, 713 F.2d 401, 404–05 (8th Cir.1983). Iredia's identification as a Nigerian was relevant as the witness, Joseph Capasso, testified, so that references to his nationality or color were not prejudicial.

■ Mr. Capasso testified that: 1) "a dot" after an entry on a document signifies that the entry was made by a Nigerian, and 2) he learned this while attending seminars which included lectures on Nigerian fraud. Throughout the trial, documents containing

dots after words or figures were admitted into evidence.

The standard for finding reversible error due to racial prejudice was set forth in *United States v. Williams,* 809 F.2d 1072, 1096 (5th Cir.), *rev'd on other grounds,* 828 F.2d 1, *cert. denied,* — U.S. ——, 108 S.Ct. 228, 98 L.Ed.2d 187 (1987). We stated that, "[T]o warrant a new trial prosecutorial misconduct in the form of improper comment or questioning must be so pronounced and persistent that it permeates the entire atmosphere of the trial." Mr. Cappasso's isolated testimony fails to meet this standard, although the admission of the "documents with dots" may have further influenced the jury to a mild degree.

Even if the testimony were viewed as prejudicial, however, any error was cured by an instruction to the jury to disregard the comments concerning Nigerian fraud, as well as by general instructions to disregard racial comments. *Bostic,* 713 F.2d at 405.

█ Iredia also charges error in the prosecutor's comment that the defendant tried to disguise his handwriting. An address book was found in Iredia's car and was admitted into evidence at trial. During the testimony of the arresting officer, Agent Henck, the prosecutor accused Iredia of intentionally disguising his handwriting while giving an exemplar. Both the government and the defense closed after Agent Henck's testimony. In charging the jury, the court explained that the arguments of counsel were not evidence.

Whether the prosecutor's comments constitute reversible error turns on whether the remarks were both "inappropriate and harmful." *United States v. Lowenberg,* 853 F.2d 295, 301 (5th Cir.1988). "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Id.* at 302. The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict. *United States v. Jones,* 839 F.2d 1041, 1049 (5th Cir.1988). In making this determination, we must consider: 1) the magnitude of the prejudicial effect of the statements; 2) the efficacy of any cautionary instruction; and 3) the strength of the evidence of the defendant's guilt. *Lowenberg,* 853 F.2d at 302.

Iredia contends that the prosecutor's remarks were improper, citing case law disapproving of the prosecutor's assertions of personal belief in the guilt of a defendant. *See e.g., United States v. Garza,* 608 F.2d 659, 663 (5th Cir.1979). However, the *Lowenberg* test also requires consideration of the strength of the evidence and of any cautionary instruction.

The United States points to substantial evidence that is sufficient to sustain the conviction regardless of the remarks of the prosecutor. Additionally, the district court went to great pains to emphasize to the jury that the remarks were to be disregarded. On these facts, no reversible error is presented.

█ Iredia next contends that the prosecutor's closing argument impermissibly shifted the burden of producing evidence to the defense. The prosecution stated:

> Mr. Zimmerman complained about the absence of a handwriting expert in the case. I have already totally acknowledged and will agree with the proposition that the burden of proof is entirely upon the Government. The Defendant has no burden to produce any evidence or any witnesses. *However, they do have the opportunity to present evidence if they wish.* (emphasis added)

This objection to the prosecutor's statements as comments on the election not to testify was overruled, but the court gave a cautionary instruction. Counsel then objected to the prosecutor's shifting the burden of proof to the appellant. The court overruled the objection, and the prosecutor continued by stating to the jury, "I simply say that if there was that evidence available to defense lawyers don't you think they would put it on—." Iredia objected again, and the court instructed the jury not to consider the statement because the burden of proof is on the government. Iredia then moved for a mistrial.

The United States contends that the prosecutor's comments can be construed as simply a comment on the failure of the defense to counter or explain the evidence presented, which is usually permissible. *United States v. Soudan*, 812 F.2d 920, 930 (5th Cir.1986). Iredia retorts that the comments refer to the defense's failure to call a handwriting expert equally available to both parties. The well-settled rule is that drawing any inference from a party's failure to call a witness equally available to both sides is impermissible. *United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir. 1970).

■ The court gave an immediate curative instruction that should have sufficiently erased any doubts as to which party had the burden of proof. *United States v. Soudan*, 812 F.2d 920, 930 (5th Cir.1986). While the prosecutor's statement does not require reversal in this instance, we do not approve of comments reflecting on the lack of evidence presented by a defendant in a criminal case where, as here, he has presented none. Such a course of action by the prosecutor is a parlous one at best, of necessity sailing close to implying that the defendant is obligated to produce evidence of his innocence. When no curative instruction is given, the chances for reversal increase, although each instance should be reviewed on its particular facts.

Iredia further argues that the cumulative effect of these errors requires reversal of his conviction. In *United States v. Garza*, 608 F.2d 659 (5th Cir.1979), we recognized that "while any single statement among those we have isolated might not be enough to require reversal of the conviction.... we think it beyond question that the prosecutor's improper comments, taken as a whole, affected substantial rights of the defendant." For another instance see *United States v. Herberman*, 583 F.2d 222, 231 (5th Cir.1978). Cumulative reversible error, although not unknown to our jurisprudence, is a rarity. In today's case, however, none of the first three points constitutes error, and their cumulative effect is insufficient to form a basis for reversal, since none prejudices substantial rights of the defendant.

■ Iredia also complains of the district court's instruction in its supplemental charge on aiding and abetting. A federal district court is granted broad discretion in responding to a jury's request for additional instruction. *United States v. Duvall*, 846 F.2d 966, 977 (5th Cir.1988). The supplemental instructions must be considered as a whole and in light of the other instructions previously given. *Id.* The court gave a comprehensive instruction on aiding and abetting in its original charge, and then gave a supplemental charge at the request of the jury. Iredia first contends that the supplemental charge failed to instruct properly on the intent element of aiding and abetting because the court used the word "willing" participant rather than "willful" participant. The original charge instructed that the defendant "must act deliberately and on purpose with specific intent to do what the law forbids." The court also related the supplemental charge to its original instruction, thus the use of the word "willingly" instead of the proper term "willfully" should not have misled the jurors.

■ Next, the appellant insists that the district court erred in instructing the jury that aiding and abetting could happen "before or after" the fact. Such an objection, made at trial, was overruled, the court instructing the jury that "[h]is involvement could come before or after that use ...", and "his involvement whether it was before or after or during or all three times...." However, the jury was told in the same supplemental instruction "[b]y definition he would have had to have been involved in the plan or scheme to do this at a time before it was actually done." The supplemental instruction did inform the jury that the defendant would have to have knowledge beforehand and have joined in the activity before the use of the credit cards in order to be guilty. Even though the court's charge may be ambiguous, any error was harmless, because no other person participated in the fraud and the defendant

was not convicted on the basis of the instruction.

■ Iredia also argues that the address book obtained from his car was admitted into evidence in violation of the fourth amendment. Under *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), law enforcement officers are permitted to search the passenger compartment of an arrestee's automobile incident to a lawful arrest. Agent Henck did so. During the search an address book was observed in plain view, but it was not disturbed. The vehicle was then brought to the Secret Service garage, where Henck examined the address book to determine if it contained money or other valuables. During this search, Henck observed entries in the book which he thought suspicious. The book was then seized, along with a key ring and cash in the glove compartment. All three items were in plain view during the initial search at the arrest scene. There is no dispute that the latter two items were properly seized.

Iredia contends that the search at the garage was unlawful because it was not conducted in accordance with standardized police procedures, asserting that Agent Steel testified at the suppression hearing that standard procedure was not followed. The United States, also relying on Agent Steel's testimony, asserts the contrary. According to Steel, agency policy requires that an agent check the vehicle to determine if it is safe before moving it from the location of the arrest. When the vehicle contains items in plain view that appear to be evidence, those items are logged on an "evidence inventory" once the vehicle is brought to the secret service garage.

It is clear that at least one reason for the search at the garage was to inventory the items deemed to have evidentiary value at the *Belton* search. "When in the course of a legal warrantless search a police officer comes upon a suspicious object, he is entitled to inspect it, and, if it consists of ... evidence of a crime, to seize it ..." *United States v. Ochs*, 595 F.2d 1247, 1256 (2d Cir.), *cert. denied*, 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979). If the address

book's evidentiary value was noted at the time of the *Belton* search, its seizure would be justified. In the district court evidentiary ruling, the court stated that Henck testified that it was "immediately apparent" to him during the *Belton* search that the address book most likely constituted incriminating evidence. As a result, the search was not improper.

■ Iredia next points to numerous instances where he asserts that the district court: 1) suggested to the government how to improve its presentation, 2) summarized crucial government evidence, explained its relevance to the jury, or admitted evidence *sua sponte* which had been excluded before, and 3) rebuked or admonished defense counsel in the presence of the jury, or expressed dissatisfaction with counsel's insistence on following the rules of evidence.

The latitude enjoyed by a federal district judge in controlling proceedings in his court is illustrated by *United States v. Williams*, 809 F.2d 1072 (5th Cir.1987). In *Williams*, we examined judicial conduct that consisted of frequent interruptions of and occasional belittling comments regarding defense counsel, limitation of cross-examination, and judicial questioning of witnesses. While recognizing that the court "trod the line of error" at various times, we did not find the incidents to have deprived the appellants of a fair trial. Here, as in *Williams*, although on a few occasions the remarks and conduct of the trial judge may not have been all that could be desired, on balance they were well within his prerogatives; and none of the incidents are sufficiently prejudicial to constitute error. Most of the remarks, indeed, were not expressions of opinions about the evidence, but more in the nature of exercising firm control over the trial. *United States v. Westbo*, 746 F.2d 1022, 1027 (5th Cir.1984).

■ Iredia next complains that the district court erred by admitting hearsay evidence in violation of Rule 803(6) Federal Rules of Evidence. To establish the proper predicate for admission of business records under Fed.R.Evid. 803(6), the witness who testified as to the authenticity of the documents must be either the custodian of the

records or a qualified witness. *Coughlin v. Capitol Cement Co.,* 571 F.2d 290 (5th Cir.1978). A qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met. *Id.* at 307. Iredia contends that the bank employees had no personal knowledge of the record keeping practice and of the circumstances under which the objected to records were kept. There is, however, no requirement under Rule 803(6) that the witness laying the foundation be able to attest personally to its accuracy. *United States v. Hutson,* 821 F.2d 1015, 1021 (5th Cir.1987). The government responds that each witness testified that to his own knowledge the records were received and kept in the ordinary course of business activity, and it was each employee's regular business practice to receive the business records. As a result, the requirements of Rule 803(6) were satisfied and no error is shown.

Finally, Iredia complains that he was not properly charged with separate offenses for each unauthorized use of a credit card in excess of $1,000 under 18 U.S.C. § 1029. Convicted on thirteen counts under 18 U.S.C. § 1029, he contends that a strict construction of the statute requires a finding that he should stand convicted of only one, aggregating the use of all unauthorized credit cards during a one year period to constitute a single offense. In support of his argument, the appellant looks to our interpretation of the credit card section of the Truth in Lending Act, 15 U.S.C. § 1644 in *United States v. Mikelberg,* 517 F.2d 246, 250 (5th Cir.1975), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1104, 47 L.Ed.2d 313 (1976). In *Mikelberg,* we determined that the term "transaction" could comprise more than one use of a fraudulently obtained credit card. Iredia equates this with the use of the singular "offense" in 18 U.S.C. § 1029(c) as it relates to § 1029(a).

The United States interprets 18 U.S.C. § 1029 as establishing a separate criminal offense for the use of *each* unauthorized access device for which $1,000 of value has been obtained during a one year period. It

argues that a practical reading of the "one or more" language of (a)(2) is that Congress intended to cover those situations where multiple unauthorized access devices are required in conjunction with each other to complete a fraudulent transaction. This interpretation of the statute is consistent with the "primary focus" of § 1029 to "fill cracks in the criminal law targeted at credit card abuse." *United States v. Brewer,* 835 F.2d 550, 553 (5th Cir.1987). The appellant was thus properly charged with each unauthorized use, and no error was committed. The judgment is

AFFIRMED.