# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 27, 2021

Lyle W. Cayce
Clerk

No. 18-11108

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

CHUKWUMA JONAS OSUAGWU,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-CR-343-1

Before KING, HIGGINSON, and WILSON, *Circuit Judges*.
PER CURIAM:[*]

Following a jury trial, Chukwuma Jonas Osuagwu was convicted of five counts of bank fraud in violation of 18 U.S.C. § 1344 and one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349. For the reasons that follow, we AFFIRM.

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 18-11108

## I.

This criminal appeal challenges the district court's evidentiary rulings and the sufficiency of the evidence, focusing predominately on whether the government proved beyond a reasonable doubt that the victim banks—Bank of America, J.P. Morgan Chase, and Wells Fargo—were insured by the Federal Deposit Insurance Corporation ("FDIC") at the time of the alleged fraud.

Following a seven-day jury trial, during which he represented himself, Chukwuma Jonas Osuagwu was convicted of five counts of bank fraud and one count of conspiracy to commit bank fraud.[1]

At trial, the government adduced evidence of a scheme in which Osuagwu fraudulently obtained mortgage loans for residential condominium units in Dallas, Texas, and assisted others in doing the same. This scheme resulted in a total loss of over $1.5 million to the victim banks, including Bank of America, J.P. Morgan Chase, and Wells Fargo.

In proving its case, the government submitted affidavits from counsel for FDIC regarding the banks' FDIC-insured status.[2] Osuagwu did not object to the affidavits' admission at trial, though he now contends that their admission violated the Sixth Amendment's Confrontation Clause.

---

[1] Osuagwu was sentenced to seventy-two months of imprisonment as to each count, to be served concurrently. The district court also imposed concurrent sentences of five years of supervised release. Osuagwu does not challenge his sentence on appeal.

[2] As relevant here, an essential element of bank fraud—and a requirement for establishing federal jurisdiction—is that the victim banks are FDIC insured such that they constitute "financial institution[s]" within the meaning of the bank fraud statute. *See* 18 U.S.C. § 1344; *see also* 18 U.S.C. § 20 (defining "financial institution"); *United States v. Davis*, 735 F.3d 194, 198–99 (5th Cir. 2013) (explaining that a victim bank must be a financial institution and that the government may prove as much by demonstrating that the victim bank is FDIC insured).

No. 18-11108

Additionally, the government submitted bank and mortgage loan records, the authenticity or foundation of which Osuagwu did not challenge at trial. Osuagwu did, however, move for judgment of acquittal, which the district court denied. Osuagwu timely appeals.

## II.

Osuagwu challenges the government's proof of the FDIC-insured status of the victim banks in two ways: (1) the admission of the affidavits from FDIC's counsel violated the Confrontation Clause, and (2) there was insufficient evidence from which a jury could reasonably conclude that the victim banks were insured by FDIC at the time of the alleged fraud. Neither challenge is successful.

*1. Osuagwu's Confrontation Clause challenge fails plain-error review.*

Osuagwu argues for the first time on appeal that admission of affidavits from FDIC's counsel regarding the victim banks' FDIC-insured status violated the Sixth Amendment's Confrontation Clause.

Although "[w]e usually review an alleged Confrontation Clause violation *de novo*, subject to harmless-error analysis," where a defendant does "not make a timely and specific Confrontation Clause objection to the introduction of . . . [certain] evidence," we review that challenge for plain error only.[3] *United States v. Martinez-Rios*, 595 F.3d 581, 584 (5th Cir. 2010) (citation omitted).

---

[3] To the extent that Osuagwu argues that we should review this challenge de novo, he is incorrect. Osuagwu never raised a Confrontation Clause challenge to the admission of the affidavits from FDIC's counsel. Accordingly, plain-error review applies. *See United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009) ("To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction.").

No. 18-11108

Under plain-error review, Osuagwu must show that (1) the district court erred; (2) the error was clear or obvious; (3) the error affected his substantial rights; and, (4) we should exercise our discretion to correct the error because "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. And "that right is violated where the prosecution introduces 'testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Martinez-Rios*, 595 F.3d at 585 (quoting *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)); *see also United States v. Acosta*, 475 F.3d 677, 680 (5th Cir. 2007).

Testimonial statements include those statements that "would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" *Crawford*, 541 U.S. at 51–52. In other words, "a statement is testimonial if its 'primary purpose' is to 'establish or prove past events potentially relevant to later criminal prosecution.'" *United States v. London*, 746 F. App'x 317, 321 (5th Cir. 2018) (quoting *United States v. Duron-Caldera*, 737 F.3d 988, 992–93 (5th Cir. 2013)). We have held that "[r]ecords 'specifically produced for use at trial,' as opposed to those kept in the ordinary course of government business, 'are testimonial and are at the heart of statements triggering the Confrontation Clause.'" *Id.* (quoting *Martinez-Rios*, 595 F.3d at 586).

And indeed, in this case, it is undisputed that certain statements in the affidavits were likely testimonial—i.e., the statements of FDIC's counsel in

the affidavit that "after diligent search, no record or entry in the official records of the FDIC has been found to exist which terminated the status" of the banks as insured by the FDIC and that the banks retained their insured statuses through the relevant dates. *See id.* at 321–22. But, on plain-error review, even if admission of the affidavits without presenting FDIC's counsel as a witness for cross-examination was an error, Osuagwu must show, *inter alia*, that the error affected his substantial rights. *See Martinez-Rios*, 595 F.3d at 587.

Specifically, Osuagwu must show "a reasonable probability that, but for [the Confrontation Clause violation], the result of the proceeding would have been different." *Martinez-Rios*, 595 F.3d at 587 (alterations in original) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004)). Osuagwu has failed to show as much.

As we discuss below, the government introduced ample evidence, other than the affidavits from FDIC's counsel, to establish that the victim banks were insured by FDIC. Namely, the government proffered bank employee testimony regarding each bank's FDIC-insured status and the FDIC insurance certificates. And this type of unchallenged bank employee testimony, together with FDIC insurance certificates for each bank, establishes each victim bank's FDIC-insured status. *See United States v. Slovacek*, 867 F.2d 842, 845–47 (5th Cir. 1989); *United States v. Maner*, 611 F.2d 107, 108–12 (5th Cir. 1980); *cf. United States v. Schultz*, 17 F.3d 723, 727 (5th Cir. 1994) (explaining that if bank officials with personal knowledge of the bank's insurance status had testified, then that testimony, if unchallenged, would have been sufficient). In light of this ample evidence of the victim banks' FDIC-insured status, detailed more fully below, Osuagwu cannot show a reasonable probability that, but for the Confrontation Clause violation, the outcome of the proceeding would have been different. Therefore, there was no plain error in the admission of the affidavits.

*2. There was sufficient evidence from which a jury could reasonably conclude that the victim banks were insured by FDIC at the time of the alleged fraud.*

Osuagwu also challenges the sufficiency of the evidence as to the FDIC-insured status of the victim banks.

We review the sufficiency of the evidence supporting a conviction de novo, but the review is "nevertheless highly deferential to the verdict." *United States v. De Nieto*, 922 F.3d 669, 677 (5th Cir. 2019) (quoting *United States v. Chapman*, 851 F.3d 363, 376 (5th Cir. 2017)). Indeed, we "must affirm a conviction if, after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc)). Plainly put, "a defendant seeking reversal on the basis of insufficient evidence swims upstream." *United States v. Mulderig*, 120 F.3d 534, 546 (5th Cir. 1997).

To establish federal jurisdiction and prove a violation of 18 U.S.C. § 1344, the government must prove beyond a reasonable doubt that the victim banks were "financial institutions" within the meaning of the statute. *See* 18 U.S.C. § 1344; *Davis*, 735 F.3d at 198–99. Put differently, the government must prove that the victim banks were insured by FDIC at the time of the alleged fraud. *See* 18 U.S.C. § 1344; *Davis*, 735 F.3d at 198–99; *see also* 18 U.S.C. § 20 (defining "financial institution"). To be sure, even if the government presents sparse proof of such insurance, "[s]parse evidence . . . can be enough." *United States v. Brown*, 616 F.2d 844, 848 (5th Cir. 1980). Consequently, "[u]ncontradicted testimony [that] the deposits were federally insured is sufficient." *United States v. Baldwin*, 644 F.2d 381, 385 (5th Cir. 1981).

No. 18-11108

In this case, based on the unchallenged testimony of bank employees alongside the FDIC insurance certificates,[4] a rational jury could reasonably conclude that the victim banks were insured by FDIC at the time of the alleged fraud.[5] *See Slovacek*, 867 F.2d at 845–46; *Maner*, 611 F.2d at 108–12. For these reasons, Osuagwu's sufficiency of the evidence argument fails.

---

[4] Specifically, as to Bank of America's FDIC-insured status, a senior vice-president identified the FDIC insurance certificate for "Bank of America, National Association," dated July 23, 1999, and testified that, to her knowledge, Bank of America had been insured by FDIC every day since then to the present. Similarly, a branch manager for Chase Bank and custodian of records for J.P. Morgan Chase Bank identified the FDIC insurance certificates for "Chase Bank USA, National Association," which reflected a date of March 1, 2005, and "J.P. Morgan Chase, National Association," which reflected a date of November 13, 2004. The branch manager testified that "J.P. Morgan Chase" had been an "FDIC-insured entity in 2004, 2005, 2006, and 2007." Additionally, the vice-president of the Home Advisory Support Line for Chase Bank, testified that "JP Morgan Chase" had been FDIC insured in 2006 and 2007. As for Wells Fargo, a financial crimes investigations manager, testified that "Wells Fargo" had been FDIC insured in 2007 when the fraudulent loan had been made, and the government introduced the FDIC insurance certificate for "Wells Fargo Bank, National Association," which was dated February 20, 2004.

[5] To the extent that Osuagwu argues that the entities referenced in the indictment, the FDIC insurance certificates, and the bank employee testimony do not match (e.g., the indictment and witness testimony referred to "Bank of America," and the FDIC insurance certificate referred to "Bank of America, National Association"), this argument misses the mark. Plainly, although the bank employees did not specifically utilize the names of the entities identified in the FDIC insurance certificates when testifying about each victim bank's FDIC-insured status, a reasonable jury could have inferred from the context that the employees were referring to the entities named in the certificates since their testimony was presented during the introduction of each FDIC insurance certificate into evidence. *See United States v. Rangel*, 728 F.2d 675, 676 (5th Cir. 1984) (determining that jury could have reasonably inferred from bank official's testimony that credit union was insured meant it was insured at all times); *see also United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012) (noting that we evaluate all evidence, "whether circumstantial or direct, in the light most favorable to the [g]overnment[,] with all reasonable inferences to be made in support of the jury's verdict" (alteration in original) (quoting *United States v. Moser*, 123 F.3d 813, 819 (5th Cir. 1997))). Furthermore, the loan applications Osuagwu submitted reflect signature blocks for employees of entities that appear to be consistent with the entities listed on the FDIC insurance certificates.

No. 18-11108

### III.

On appeal, Osuagwu also argues for the first time that the government failed to lay a proper foundation for the admission into evidence of Bank of America and J.P. Morgan Chase Bank mortgage loan and account records. Because Osuagwu did not raise this challenge below, we review for plain error.[6] *United States v. Lewis*, 796 F.3d 543, 545 (5th Cir. 2015).

Below, we first discuss Osuagwu's challenges to the Bank of America records before turning to his challenges to the J.P. Morgan Chase Bank records.

As a general matter, the district court "has broad discretion to determine the admissibility of . . . documents" into evidence. *United States v. Box*, 50 F.3d 345, 356 (5th Cir. 1995). Before business records—such as the mortgage loan and account records at issue here—may be admitted into evidence under Federal Rule of Evidence 803(6), "the custodian of the business records or 'other qualified witness' [must first] lay a foundation . . . ."[7] *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008).

---

[6] To the extent that Osuagwu argues that we should review this evidentiary challenge for abuse of discretion, he is incorrect. Although Osuagwu unsuccessfully opposed the government's introduction of certain bank records prior to trial, the record does not reflect that Osuagwu objected to the admission of the bank records on the basis of authenticity or on a failure to lay a proper foundation. As such, plain-error review applies. *Neal*, 578 F.3d at 272.

[7] Specifically, Federal Rule of Evidence 803(6) provides that a record of regularly conducted activity may be admitted if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with [Federal Rule of Evidence] 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not

That said, "[t]here is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy." *Id.* (quoting *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990)). "A qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met." *Id.* (quoting *United States v. Iredia*, 866 F.2d 114, 120 (5th Cir. 1989)).

In challenging the foundation laid for the Bank of America records, Osuagwu contends that the testimony of a senior vice-president of Bank of America and a Bank of America records custodian was insufficient to show that the records were made as part of a "regular practice" as required by Federal Rule of Evidence 803(6). Osuagwu is incorrect.

Specifically, the senior vice-president testified that she has been employed with Bank of America for thirty-two years and that her entire career involved mortgages and underwriting. She also detailed all of the documents that comprise a mortgage loan file at Bank of America and identified, *inter alia*, the loan files for properties charged in the indictment. Finally, the senior vice-president explicitly testified that the records were "kept in the regular course of a regularly conducted business activity of Bank of America," were "made by someone with personal knowledge of the events reflected in those documents," and were "made at or near the time the events in the documents occurred." This was sufficient testimony to establish that the Bank of America mortgage loan records were made as part of a regular practice as required by the Federal Rules of Evidence. *See* Fed.

---

show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

R. Evid. 803(6)(C); *see also United States v. Wilson*, 249 F.3d 366, 376 (5th Cir. 2001), *abrogated on other grounds by Whitfield v. United States*, 543 U.S. 209, 212 (2005); *Iredia*, 866 F.2d at 120 (finding no error where bank employees "testified that to [their] own knowledge the records were received and kept in the ordinary course of business activity, and it was each employee's regular business practice to receive the business records"). Therefore, admission of the Bank of America mortgage loan records was not an error, much less a plain error.

The same is true of the Bank of America account records. As to those records, the custodian of records for Bank of America testified to the records' authenticity, detailed the process for certifying records for court, identified the account records (i.e., bank statements) in Osuagwu's name, and confirmed that such records were "part of a regularly conducted business activity of Bank of America." As such, admission of the Bank of America account records was similarly not an error, much less a plain error. *See Iredia*, 866 F.2d at 120; *see also United States v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019).

Finally, as to the J.P. Morgan Chase Bank records, Osuagwu argues that, in the absence of testimony from a qualified witness, these records were improperly admitted because the records are from a foreign bank. This is not so. The records reflect the lender as "Chase Bank USA, N.A." in "Ontario, CA 91764."[8] And the Federal Rules of Evidence provide that certified domestic records of regularly conducted activity are self-authenticating and so may be admitted without the trial testimony of a qualified witness. *See*

---

[8] It appears that Osuagwu has mistaken "Ontario, CA 91764" for Ontario, Canada as opposed to Ontario, California. *See Organic Cannabis Found., LLC v. CIR*, 962 F.3d 1082, 1096 (9th Cir. 2020) (taking judicial notice of a ZIP code listed on a government website).

No. 18-11108

FED. R. EVID. 803(6)(D), 902(11). Because these records were introduced pursuant to a Rule 902(11) affidavit, there was no error in their admission, much less a plain error.

## IV.

For the foregoing reasons, we AFFIRM.