**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 1, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

IGNACIO LARA-IBANEZ,

Defendant-Appellant.

No. 05-8126
(D.C. No. 05-CR-219)
(Wyoming)

**ORDER AND JUDGMENT**[*]

Before **McWILLIAMS**, Senior Circuit Judge, **ANDERSON**, Senior Circuit Judge, and **BALDOCK,** Circuit Judge.

On July 13, 2005, in a one-count indictment filed in the United States District Court for the District of Wyoming, Ignacio Lara-Ibanez (the defendant) was charged with having been found in the United States after having been previously deported from the United States, and "having not obtained the consent of the Attorney General of the United States or his successor, the Secretary for Homeland Security . . . to reapply for admission

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3. After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

into the United Sates," in violation of 8 USC §§ 1326(a)(1) and (2) and (b)(2).  On July 18, 2005, the defendant pled not guilty.  On September 12, 2005, the case proceeded to trial by jury, and on September 13, 2005, the jury found the defendant guilty as charged.  A pre-sentence report set defendant's adjusted offense level at 16, and his criminal history category at VI, resulting in a guideline range of 46 to 57 months imprisonment.  The district court imposed a sentence of imprisonment for 46 months.  The defendant then filed a timely notice of appeal.

At trial, the government called three witnesses, and the defendant called none.  A brief summary of the government's evidence will place the one issue raised on appeal in focus.

Officer Buhler of the Casper, Wyoming Police Department testified that he responded to a report of a "suspicious person" who allegedly had been "lurking" behind a local Casper service station for some 45 minutes.  The officer, upon arrival at the service station, made contact with the defendant.  According to Officer Buhler, the defendant "evaded" questions about his name, date of birth, and social security number by giving "conflicting" answers to the officer, whereupon the officer arrested the defendant for interfering with a police officer.

The defendant was then taken to the local Casper police station and "booked." Using the name given the booking officer by the defendant and the several dates of birth also given by the defendant, the booking officer contacted a local Immigration &

Customs Enforcement (ICE) officer who determined to his satisfaction that the defendant was in Casper illegally, and he placed a "verbal hold" order on the defendant.

Shortly thereafter, a local Casper ICE Officer, Agent Marco Rodriguez, began his investigation of the defendant's status in the United States. He immediately requested information and documents that were contained in what the parties referred to as the defendant's "A-file." One of the documents that Rodriguez received was a Warrant of Removal/Deportation, and, based on his comparison of the defendant's booking photograph and the photograph on the Warrant of Deportation, Agent Rodriguez determined to his satisfaction that the defendant was the person named in the Warrant of Deportation. Agent Rodriguez further determined, from materials in the A-file, that the defendant had been previously deported two times from the United States, the most recent of which had occurred on March 31, 2005. Armed with this information, Agent Rodriguez questioned the defendant who readily admitted that he was the subject of the Warrant of Deportation and that he had been twice deported from the United States. However, the defendant declined to make a written statement to that effect. At Agent Rodriguez's request, the defendant provided him with fingerprints for the purposes of comparing his prints with the prints on the Warrant of Deportation. A final witness for the government, a fingerprint analyst, compared the prints taken from the defendant with the prints of the Warrant of Deportation and testified that they matched. There was no cross-examination of the fingerprint analyst by defense counsel.

On appeal, the defendant raises one issue, which counsel frames as follows:

> "Was Appellant's right to confrontation violated when hearsay documents from his immigration file were used against him at trial?"

In thus arguing, counsel relies entirely on *Crawford v. Washington*, 541 U.S. 36 (2004). In that case, the defendant and his wife went to the apartment of a man who had allegedly tried to rape the defendant's wife. In the ensuing confrontation involving the defendant, his wife, and the alleged assailant, the defendant stabbed the latter. The police later took recorded statements from both the defendant and his wife. The defendant was thereafter charged with assault and attempted murder. The State of Washington at the time had a marital privilege statute which, generally, barred a spouse from testifying at a trial of the other spouse without the latter's consent. The defendant in *Crawford* did not consent thereto. Accordingly, the state sought to introduce the defendant's spouse's recorded statement, which, according to the state, tended to contradict the defendant's prior testimony given at trial that he had acted in self-defense. On that basis, the trial court admitted into evidence the recorded statement of defendant's wife. A jury convicted the defendant, but the Washington Court of Appeals reversed. However, the Washington Supreme Court on appeal reinstated defendant's conviction. On certiorari the Supreme Court reversed and concluded that admitting the recorded statements of the defendant's wife, which the Court characterized as "testimonial hearsay," violated defendant's Sixth Amendment right "to be confronted with evidence against him."

*Crawford* at 68.

At the conclusion of the government's case, the government moved to admit into evidence the defendant's so-called immigration file, which included the defendant's warrant of removal and deportation, a Certificate of Nonexistence of a Record, as well as other matters. Based on *Crawford v. Washington*, *supra*, the defendant objected thereto. After only a very short argument, the district court overruled defendant's objections and received into evidence defendant's immigration file. In so doing, the district court relied on Fed. R. Evid. 803(8) and (10), which provide as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
>
> \* \* \* \* \* \* \* \* \*
>
> (10) Absence of public record or entry. To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a certification in accordance with rule 902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or

entry.

As indicated, on appeal the defendant's only argument is that under *Crawford*, *supra,* the district court erred in admitting into evidence over timely objection his immigration files and admitting Agent Rodriguez' testimony regarding such. As concerns *Crawford, supra,* we would note at the outset, that, in reversing, Justice Scalia, writing for the Court, noted, at page 56, "There were always exceptions to the general rule of exclusion of hearsay evidence." The foregoing comment was recognized by Justice Rehnquist in his concurring opinion in *Crawford* when he said "To its credit, the Court's analysis of 'testimony' excludes at least some hearsay exceptions, such as business records and official records. See *Ante* at 56."

By way of background, in *United States v. Figueroa,* an unpublished opinion appearing at 2000 WL 963346 (10th Cir. 2000) which predated *Crawford,* we spoke as follows:

> FN5. Figueroa suggests in his brief that the warrant of deportation or removal which stated that an INS agent had witnessed the deportation in 1997 was not sufficient evidence that he had been deported in 1997. Other courts have found that this warrant is admissible in trial as proof that a defendant was arrested and deported. *See United States v. Quezada,* 754 F.2d 1190, 1193-94 (5th Cir. 1985) (holding that warrant of deportation is admissible hearsay under Fed. R. Evid. 803(8)(B) to prove defendant was deported); *United States v. Hernandez-Rojas,* 617 F.2d 533, 534-35 (9th Cir. 1980) (same). We agree with these courts that the warrant of deportation is admissible to prove a defendant was in fact deported.

*Figueroa* at **5, n.5.

In *Figueroa,* we relied on *United States v. Quezada,* 754 F.2d 1190, 1193 (5th Cir. 1985 ) and *United States v. Hernandez-Rojas*, 617 F.2d 533, 534-35 (9th Cir. 1980), both of which hold that a warrant of deportation is admissible under Fed. R. Evid. 803(8) to prove a defendant's prior deportation. And subsequent to *Crawford,* both those circuits have since held that a warrant for deportation, being "non-testimonial," is admissible against a defendant in a criminal case based on reentry after deportation. *United States v. Bahena-Cardenas*, 411 F. 3d 1067, 1075 (9th Cir. 2005) and *United States v. Valdez-Maltos,* 443 F. 3d 910, 911 (5th Cir. 2006). *See also United States v. Cantellano*, 430 F. 3d 1142, 1145 (11th Cir. 2005).

The defendant's immigration file also contained a certificate signed by one Mike Quinn, stating that no record exists that the defendant had ever sought, let alone obtained, a certificate to reenter the United States. In this regard the indictment charged, *inter alia*, that the defendant had reentered the United States after deportation even though he had "not obtained the consent of the Attorney General of the United States or his successor, the Secretary for Homeland Security, Title 6, United States Code §§ 202(3), (4) and 557 to reapply for admission into the United States." A Certificate of No Existence of Record (CNR) has also been held to come within the exception to the hearsay rule as set forth in Fed. R. Evid. 803(10). See, for example, *United States v. Cervantes-Flores,* 421 F.3d 825, 830-834 (9th Cir. 2005), where the 9th Circuit held "that the CNR was properly

admitted as nontestimonial evidence under *Crawford*."

      Judgment affirmed.

                                   Submitted for the Court,


                                   Robert H. McWilliams
                                   Senior Circuit Judge