**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 4, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee/Cross-
Appellant,

    v.

HECTOR SALINAS-VALENCIANO,

    Defendant-Appellant/Cross-
Appellee.

No. 06-3182 & 06-3224

(District of Kansas)

(D.C. No. 05-10143-01-JTM)

### ORDER AND JUDGMENT[*]

Before **MURPHY**, **McCONNELL**, and **McKAY**, Circuit Judges.

This appeal presents a tricky evidentiary question, as yet unresolved in this

Circuit, stemming from *Crawford v. Washington*, 541 U.S. 36 (2004).

Unfortunately, because of inadequate briefing, we cannot render a firm and

precedential answer.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

I.

Hector Salinas-Valenciano was arrested in Sedgwick County, Kansas on March 6, 2005, on domestic-battery and drug charges. County officials informed Immigration and Customs Enforcement (ICE), which placed a detainer hold on the Defendant the next day on the suspicion that he was an illegal alien who had previously been deported after commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). He was convicted of the state charges on July 11, 2005, sentenced to time served, and transferred the next day to ICE custody.

On July 26, 2005, the Defendant was indicted federally on one count of reentry after deportation subsequent to an aggravated felony. A § 1326 indictment requires that the government prove four things, one of which is that the defendant never applied for and received permission to reenter the country. *United States v. Martinez-Morel*, 118 F.3d 710, 712-13 (10th Cir. 1997). At trial, the government attempted to prove this element solely through the introduction of a Certificate of Non-existence of Record (CNR). The CNR was a statement signed by Mike Quinn, the chief of the Records Service Branch at U.S. Citizenship and Immigration Services, stating that either Mr. Quinn or one of his employees had searched their database for a record that Mr. Salinas-Valenciano had applied for and received permission to re-enter. It stated that, "after a diligent search was performed in these database systems, no record was found to exist indicating that [Mr. Salinas-Valenciano] obtained consent . . . for re-

admission in the United States." Appellant's Br., App. G, at 2. The CNR listed the information that was keyed into the data search: the file number, the subject's name ("HECTOR SALINAS-VALENCIANO"), other names (none), birth date, and country of birth. Neither Mr. Quinn nor anyone else involved in the database search or the preparation of the CNR testified.

To obtain a § 1326 conviction, the government must also prove that the defendant was actually deported. *Martinez-Morel*, 118 F.3d at 712-13. The government did so here by entering into evidence a warrant of deportation, which included a signed statement by an unidentified ICE official, saying that he saw the defendant leave the country. The government did not call that ICE official to testify or identify him by name. Mr. Salinas-Valenciano objected under *Crawford* to the admission of both the CNR and the warrant of deportation.

Mr. Salinas-Valenciano was convicted by a jury. At sentencing, the government objected that the defendant's prior conviction for attempted sexual battery was mischaracterized by the court as an aggravated felony rather than as a crime of violence, resulting in an eight-level enhancement rather than a sixteen-level enhancement. The Defendant objected that the government listed his date of capture as July 12, 2005, rather than March 7, 2005, which resulted in a higher criminal history category. The shift in criminal history raised the Defendant's sentencing range from 24-30 months to 27-33 months. The judge denied both motions and sentenced the defendant to 27 months imprisonment.

Mr. Salinas-Valenciano appeals the admission into evidence of the CNR and the warrant of deportation, arguing that both violated his rights under the Confrontation Clause as enunciated in *Crawford*. He also appeals the court's determination that he was "found in" the country on July 12 rather than March 7. The Government cross-appeals on the sentencing enhancement issue. Because we reverse on the evidentiary issue, we need not address either Mr. Salinas-Valenciano's other grounds for appeal or the government's cross-appeal.

II.

The Confrontation Clause of the Sixth Amendment states that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with witnesses against him." U.S. Const. amend. VI. In *Crawford*, the Supreme Court held that, under the Confrontation Clause, "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53-54.

The *Crawford* Court did not fully define the meaning of "testimonial," noting the existence of a number of formulations that "share a common nucleus." *Id.* at 52. It pointed out that "[m]ost of the hearsay exceptions cover[] statements that by their nature [are] not testimonial—for example, business records or statements in furtherance of a conspiracy." *Id.* at 56. This Court has since adopted a definition of "testimonial" very similar to one cited in *Crawford*. In

*United States v. Summers*, 414 F.3d 1287 (10th Cir. 2005), we held that "a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." *Id.* at 1302.

Mr. Salinas-Valenciano challenges the admission both of the warrant of deportation and of the CNR. He contends that the evidence is testimonial under *Crawford* and therefore inadmissible in the absence of testimony by the declarant. In a recent unpublished order and judgment, a panel of this Court held that both CNRs and warrants of deportation are non-testimonial, because they qualify under Fed. R. Evid. 803(8) and (10) as public records or as certificates of the absence of a public record. *United States v. Lara-Ibanez*, 203 F. App'x 200, 203-204 (10th Cir. 2006) (unpublished opinion). As an unpublished order and judgment, *Lara-Ibanez* is non-binding, and can guide our decision only insofar as it is persuasive. 10th Cir. R. 32.1(A).

We believe that the two documents raise different issues under *Crawford*, and therefore analyze them separately.

A. The Warrant of Deportation

We agree with the government—and with *Lara-Ibanez*—that warrants of deportation are not testimonial. All circuits to have addressed the issue have held that admissions of warrants of deportation do not violate *Crawford*. *United States v. Torres-Villalobos*, 477 F.3d 978 (8th Cir. 2007); *United States v. Garcia*, 452

F.3d 36, 42 (1st Cir. 2006); *United States v. Valdez-Maltos*, 443 F.3d 910, 911 (5th Cir. 2006) (per curiam); *United States v. Cantellano*, 430 F.3d 1142, 1145 (11th Cir. 2005); *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1075 (9th Cir. 2005).

The key question under *Crawford* is whether the document sought to be introduced was prepared for the purpose of litigation, or whether it was prepared for regulatory, business, or other purposes apart from the possibility of its use as evidence in a legal proceeding. *See Summers*, 414 F.3d at 1302. We believe that warrants of deportation are non-testimonial under this definition. A warrant of deportation is a public record signed by a public official attesting to the fact that the individual in question actually left the country. Its primary purpose is to enable immigration authorities to keep track of who has been deported and when. It would be useful, for example, if the deported individual later sought lawful admission to the United States. As the Eighth Circuit recently noted, "[w]arrants of deportation are produced under circumstances objectively indicating that their primary purpose is to maintain records concerning the movements of aliens and to ensure compliance with orders of deportation, not to prove facts for use in future criminal prosecutions." *Torres-Villalobos*, 2007 WL 528195, at \*4. The warrant of deportation introduced into evidence in this case was not prepared in contemplation of litigation, and its admission therefore does not violate the Sixth Amendment.

B. The Certificate of Non-Existence of Record

Three circuits have held that CNRs do not violate *Crawford*. *United States v. Urqhart*, 469 F.3d 745, 749 (8th Cir. 2006); *United States v. Cervantes-Flores*, 421 F.3d 825, 830-34 (9th Cir. 2005); *United States v. Rueda-Rivera*, 396 F.3d 678, 680 (5th Cir. 2005) (per curiam). These opinions rely heavily on the language in *Crawford* that refers to business records. *See, e.g.*, *Urqhart*, 469 F.3d at 748-49 ("*Crawford* seemingly excluded business records from the classification of testimonial statements. . . . Thus, a CNR . . . is similar enough to a business record that it is nontestimonial under *Crawford* and presents no Confrontation Clause concerns."). This is not entirely persuasive.

We can agree that the underlying Citizenship and Immigration Services database containing records of requests for permission to reenter is an official record and is not testimonial. The database is created in connection with ongoing regulatory functions independent of prosecution. Appellant's argument that he is entitled under *Crawford* to cross-examine a witness regarding the accuracy and reliability of the database is therefore mistaken.

But the CNR itself is a different matter. Unlike warrants of deportation, CNRs are prepared specifically in contemplation of litigation. Indeed, the sole purpose of a CNR is to provide the proof necessary in a prosecution under 8 U.S.C. § 1326 that the defendant was not given permission to reenter the country.

It has no other use. The CNR in this case was signed on August 9, 2005, thirteen days after the defendant was indicted. It was produced to be used as part of the government's case in chief.

The declarant with respect to the CNR is the person who actually performed the data search and who discovered no record pertaining to Mr. Salinas-Valenciano.[1] If the declarant testified at trial, he or she could be cross-examined regarding when and how the data search was conducted. It is far from clear how this could be of practical assistance to the defense in most cases. To be sure, if the defendant could establish that the query to the database was inaccurate, for example if the subject's name were misspelled or other identifying information inaccurately keyed in, this would impeach the validity of the CNR. But the CNR itself already lists precisely the information used in the data search: the subject's name, number, date of birth, and country of origin. Any errors would be evident from the face of the document. It is hard to see how cross-examination would add much of substance.

Under these circumstances, we are not certain that the evidence falls within the ambit of the Confrontation Clause, or that any violation could be other than harmless. In an analogous context, the Seventh Circuit held that it did not violate the Confrontation Clause, as interpreted in *Crawford*, to admit a certificate from

[1]The CNR is signed by Mike Quinn, but he states in the text of the CNR that "I, or an agency employee acting at my direction, performed a search for records relating to the subject identified below."

the custodian of records at a hospital attesting that attached documents establishing the presence of methamphetamine in the defendant's system were, in fact, hospital records. *United States v. Ellis*, 460 F.3d 920, 923-27 (7th Cir. 2006). The certificate "[did] not purport to convey information about [the defendant], but merely establish[ed] the existence of the procedures necessary to create a business record." *Id.* Although recognizing that the certificate was made in anticipation of litigation, the court held that this fact was not controlling. *Id.* at 927. "Given the records themselves do not fall within the constitutional guarantee provided by the Confrontation Clause," the court reasoned, "it would be odd to hold that the foundational evidence authenticating the documents do." *Id.* The court thus found admission of the certificate "too far removed from the 'principal evil at which the Confrontation Clause was directed.'" *Id.*, *quoting Crawford*, 541 U.S. at 50.

The same argument might (almost) apply to a CNR. The principal difference is that CNRs are created by agents of the government, while the certificate in *Ellis* was created by an employee of the hospital. The concerns of the Confrontation Clause might arguably be more pertinent in the case of evidence created by a government agent. Justice Scalia, writing for the Court, states:

> Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse—a fact borne out time and again throughout a history with which the Framers were

> keenly familiar. This consideration does not evaporate when testimony happens to fall within some broad, modern hearsay exception, even if that exception might be justifiable in other circumstances.

*Crawford*, 541 U.S. at 56 n.7. Whether this distinction is sufficient to require a different result is a nice question, even assuming that this Court would follow the reasoning of *Ellis*.

The government, however, did not make any of these arguments. The government's sole argument consisted of a citation to the panel's unpublished decision in *Lara-Ibanez*, and to urge the Court to adopt that analysis here. *Lara-Ibanez* devotes a single paragraph to the question of CNRs, saying simply that "A Certificate of No Existence of Record (CNR) has also been held to come within the exception to the hearsay rule as set forth in Fed. R. Evid. 803(10)." 203 F. App'x at 204. As noted in *Crawford*, however, the mere fact that a statement "fall[s] within some broad, modern hearsay exception" is not sufficient to render it nontestimonial. *Crawford,* 541 U.S. at 56 n.7. A separate analysis is needed.

*Lara-Ibanez* seemingly rests on the premise that any statement that fits within certain hearsay exceptions is, by its nature, nontestimonial. The opinion cites to Chief Justice Rehnquist's concurrence in *Crawford*, which states, "the Court's analysis of 'testimony' excludes at least some hearsay exceptions, such as business records and official records." *Crawford*, 541 U.S. at 76 (Rehnquist, C.J., concurring). But the CNR is not itself an official record within the meaning of Fed. R. Evid. 803(8); it is a document prepared for purposes of prosecution,

reporting the absence of a public record. Moreover, the premise of *Crawford* is that we are constitutionally required to do a second Confrontation Clause analysis even if we have determined that a piece of evidence fits into a hearsay exception.

As noted above, the application of the Confrontation Clause to purely ministerial documents whose only purpose is to establish the foundation for admission of nontestimonial evidence is unclear, and even if the admission of such evidence is error, it may be harmless by its nature. But we are reluctant to decide a question of first impression, particularly where it recurs so frequently, in the absence of full adversarial presentation. Because the government puts forward no argument – other than reliance on *Lara-Ibanez* – as to why the statement in question is nontestimonial and makes no argument that the error was harmless, we find for the defendant in this case.

The CNR was the government's sole evidence to prove that Mr. Salinas-Valenciano never successfully applied for re-entry. Without that evidence, the proof against the defendant is insufficient to sustain the charges.

III.

Finally, we address how the district court should proceed should the government attempt to relitigate the charges. Where a conviction is overturned because a piece of evidence necessary to obtain the conviction was erroneously admitted at trial, Double Jeopardy does not bar retrial. *Lockhart v. Nelson*, 488 U.S. 33, 39-42 (1988); *United States v. Wacker*, 72 F.3d 1453, 1465 (10th Cir.

1995).  Had the court below ruled this evidence violative of *Crawford*, "the trial judge would presumably have allowed the prosecutor an opportunity to offer [additional] evidence." *Lockhart*, 488 U.S. at 42.  Permitting retrial "thus merely recreates the situation that would have been obtained if the trial court had excluded the evidence of the conviction." *Id.*  Thus, the government is free to present new evidence on remand, including, if it wishes, testimony by a declarant who could provide the foundation for admission of the CNR.

However, the government is barred from relitigating the issue of the admissibility of the CNR, absent a testimonial foundation.  Although in future litigation the government may be able to square the admission of a CNR with the requirements of *Crawford*, it failed to do so in this case, and may not do so on remand.  *See United States v. Husband*, 312 F.3d 247, 250-51 (7th Cir. 2002) (discussing the effect of waiver and conclusive appellate rulings on remand).

We **REVERSE** the defendant's conviction and **REMAND** to district court for further proceedings.  The mandate shall issue forthwith.

Entered for the Court,

Michael W. McConnell
Circuit Judge