# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 28, 2010

No. 08-40809

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FLORENTINO MARTINEZ-RIOS,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, SMITH and ELROD, Circuit Judges.

PER CURIAM:

Florentino Martinez-Rios appeals his conviction of illegal reentry into the United States. He argues that the prosecution's reliance on a Certificate of Non-existence of Record ("CNR"), without providing the testimony of the records analyst, violated his Sixth Amendment rights under the Confrontation Clause. We affirm.

No. 08-40809

I.

Border Patrol Agent Gerald Blanco observed three individuals hanging from the side of a train passing through the inspection station in Gardendale, Texas. Blanco began to follow alongside the train in his vehicle and saw one person jump off and run into the brush. Blanco ordered the man who remained onboard to step off; the man called out, and a woman emerged from the brush. Blanco took the two individuals into custody and returned to the train with his dog.

The dog alerted to a particular area near the train, where Blanco discovered a third person, later identified as Martinez-Rios, hiding in the brush. Martinez-Rios said he was from Mexico and was undocumented.

Border Patrol Agent Marie Mireles helped to process Martinez-Rios at the Border Patrol Station by taking his fingerprints and biographical information. Mireles later testified that Martinez-Rios said he had crossed the Rio Grande the previous day and then had boarded the train at Port Laredo.

The government charged Martinez-Rios with one count of illegal reentry after deportation in violation of 8 U.S.C. § 1326. The government was required to prove that (1) Martinez-Rios was an alien; (2) he had been denied admission, excluded, deported, or removed or had departed the United States while an order of exclusion, deportation, or removal was outstanding; (3) he had not received consent to reapply for admission or demonstrated that such prior consent was not required; and (4) he subsequently entered, attempted to enter, or was at any time found in the United States. 8 U.S.C. § 1326.[1]

At trial, the government introduced the contents of Martinez-Rios's alien file, or "A-file," which is the repository of immigration records on an alien. The A-file includes the alien number assigned when an individual first encounters

---

[1] *See also United States v. Marte*, 356 F.3d 1336, 1345 (11th Cir. 2004); *United States v. Serna-Villarreal* 352 F.3d 225, 233 (5th Cir. 2003).

immigration authorities, along with aliases, fingerprints, applications for citizenship, and removal documents. Border Patrol Agent Ramiro Melendez identified Martinez-Rios's A-file, No. A-21490464, which contained a CNR, authored by A.W. Blakeway, a field office director with the U.S. Citizenship and Immigration Services. The CNR stated the following:

> 3. [Director Blakeway] or an agency employee acting at [his] direction, performed a search for records relating to [File A-21490464]. Specifically this office searched Deportable Alien Control System (DACS), Computer Linked Application Information Management System (CLAIMS), and the Central Index System (CIS).
>
> 4. That after a diligent search was performed in these database systems, no record was found to exist indicating that [A-21490464] obtained consent at anytime prior to March 1, 2003, from the Attorney General of the United States, or at anytime after February 28, 2003 from the Secretary of the Department of Homeland Security, for readmission in the United States in accordance with the 6 U.S.C. §§ 202(3) and (4) and U.S.C. § 557.

Blakeway was not called to testify regarding the certificate; instead, the prosecutor introduced that evidence through Melendez, who explained how a CNR is processed.

Martinez-Rios's counsel filed motions *in limine* seeking to prevent (1) references by the government to Martinez-Rios's prior criminal record; (2) references to specific offenses during cross-examination of the defendant; (3) any references to the A-file regarding Martinez-Rios's prior criminal convictions; (4) any references to Huntsville, Texas; and (5) evidence of Martinez-Rios's post-arrest silence and invocation of the right to counsel. None of those motions mentioned the Sixth Amendment or the right to confront witnesses. At trial, Martinez-Rios's counsel objected to the introduction of the CNR on grounds that Melendez had no personal knowledge of the case and was not the custodian of the records; as before, he did not mention the Sixth Amendment.

No. 08-40809

Martinez-Rios argues that the introduction of the CNR violated his Sixth Amendment right to confront the witnesses against him.  He concedes that, when he filed his appeal, *United States v. Rueda-Rivera*, 396 F.3d 678 (5th Cir. 2005), foreclosed that issue.  In his opening brief, he contended that the then-pending decision in *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009), might overrule *Rueda-Rivera.*  The Supreme Court has since decided *Melendez-Diaz*, and we must decide whether *Rueda-Rivera* remains the law of this circuit.

## II.

We usually review an alleged Confrontation Clause violation *de novo*, subject to harmless-error analysis.  *United States v. Morgan*, 505 F.3d 332, 338 (5th Cir. 2007).  In this instance, however, Martinez-Rios did not make a timely and specific Confrontation Clause objection to the introduction of the CNR into evidence.  We therefore review that issue for plain error only.  *See United States v. Acosta*, 475 F.3d 677, 680-81 (5th Cir. 2007).

Before a forfeited error may be corrected on appeal, (1) there must be an error (2) that is plain and (3) affects the defendant's substantial rights.  FED. R. CRIM. P. 52(b); *see also United States v. Olano*, 507 U.S. 725, 732-35 (1993).  In reviewing for plain error, this court looks to the law as it exists at the time of appellate consideration.  *United States v. Dupre*, 117 F.3d 810, 817 (5th Cir. 1997) (citing *Johnson v. United States*, 520 U.S. 461, 468 (1997)).  Granting relief under the plain-error standard of review is purely discretionary, and appellate courts should not exercise that discretion unless the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *Olano*, 507 U.S. at 732 (alteration in original) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

No. 08-40809

III.

A.

To decide whether the district court erred in admitting a CNR without providing the testimony of the records analyst, we must first address the effect of *Melendez-Diaz* on this court's precedent. We can then apply that conclusion to the facts.

1.

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Court held that that right is violated where the prosecution introduces "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." The Court observed, however, that certain statements, "by their nature [are] not testimonial—for example, business records or statements in furtherance of a conspiracy." *Id.* at 56.

The Court left "for another day any effort to spell out a comprehensive definition of 'testimonial,'" *id.* at 68, so the circuits necessarily developed their own interpretation of what is a "testimonial statement" for Sixth Amendment purposes. This issue gained particular importance in prosecutions under 8 U.S.C. § 1326, because defendants claimed that the introduction of CNR's without the testimony of the preparers violated the Sixth Amendment. Before *Melendez-Diaz*, we held that a CNR is akin to an ordinary business record and therefore does not qualify as a testimonial statement subject to the Confrontation Clause.[2] A majority of our sister circuits that considered the question reached

---

[2] *See United States v. Rueda-Rivera*, 396 F.3d 678, 680 (5th Cir. 2005); *see also United States v. Gutierrez-Gonzalez*, 111 F. App'x 732, 734 (5th Cir. 2004).

No. 08-40809

the same conclusion.[3]

The decision in *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009), however, calls those cases into doubt. There the Court addressed the question whether the introduction of a forensic analyst's laboratory report, prepared for use in a criminal prosecution to prove that bags seized by police and connected with the defendant contained cocaine, violated the Sixth Amendment. *Id.* at 2530. The prosecution placed the bags into evidence with three "certificates of analysis" that reported the weight of the bags and stated that they were found to contain cocaine. *Id.* at 2530-31. The defendant objected to the certificates, arguing that *Crawford* required the analysts to testify in person. *Id.* at 2531.

The Court characterized the certificates as falling "within the 'core class of testimonial statements' [described in *Crawford*]." *Id.* at 2532. The Court reasoned that the certificates were sworn declarations of fact made for the purpose of establishing or proving some fact—namely, that the substance found was cocaine. *Id.* The affidavits thus were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* (quoting *Crawford*, 541 U.S. at 52).

The government concedes that *Melendez-Diaz* implicitly overruled *Rueda-Rivera*, and we agree. First, *Melendez-Diaz* spoke directly to the issue in the instant case. It found particularly analogous "the cases in which the prosecution sought to admit into evidence a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it." *Id.* at 2539.

---

[3] *See, e.g.*, *United States v. Burgos*, 539 F.3d 641, 645 (7th Cir. 2008); *United States v. Urqhart*, 469 F.3d 745, 748-49 (8th Cir. 2006); *United States v. Cervantes-Flores*, 421 F.3d 825, 830-34 (9th Cir. 2005); *cf. United States v. Salinas-Valenciano*, 220 F. App'x 879, 883 (10th Cir. 2007) (holding that a CNR is testimonial); *United States v. Earle*, 488 F.3d 537, 545 (1st Cir. 2007) (declining to decide whether admitting CNR violates Confrontation Clause).

> Like the testimony of the analysts in this case, the clerk's statement would serve as substantive evidence against the defendant whose guilt depended on the nonexistence of the record for which the clerk searched. Although the clerk's certificate would qualify as an official record under respondent's definition—it was prepared by a public officer in the regular course of his official duties—and although the clerk was certainly not a "conventional witness" under the dissent's approach, the clerk was nonetheless subject to confrontation.

*Id.* (citing *People v. Bromwich*, 93 N.E. 933, 934 (N.Y. 1911); *People v. Goodrode*, 94 N.W. 14, 16 (Mich. 1903)). Though not strictly necessary for the disposition in *Melendez-Diaz*, the discussion of clerks' certificates is highly suggestive that *Rueda-Rivera* is no longer good law.

Further, the holding in *Melendez-Diaz* relies on a key distinction between records that are kept in the ordinary course of business and those that are specifically produced for use at trial:. The latter are "testimonial" and are at the heart of statements triggering the Confrontation Clause. CNR's are not routinely produced in the course of government business but instead are exclusively generated for use at trial. They are, therefore, testimonial.

Also important to the rationale in *Melendez-Diaz*, 129 S. Ct. at 2533, is the fact that the affidavits in question were used to establish a necessary fact to convict: that the bags contained cocaine. CNR's serve a comparable purpose in § 1326 cases: They establish that there is no record indicating that the alien had obtained government consent to reapply for admission––a fact necessary to convict. *See* 8 U.S.C. § 1326(a); *see also* 6 U.S.C. § 202(3)-(4). CNR's thus certainly fall within the scope of *Melendez-Diaz*.[4] Because our holding in *Rueda-Rivera* that CNR's are not testimonial statements cannot survive *Melendez-Diaz*,

---

[4] The Second Circuit reached the same conclusion on a Confrontation Clause objection to the use of a CNR in a § 1326 case. *See United States v. Madarikan*, No. 08-5589-cr, 2009 WL 4826912 (2d Cir. Dec. 16, 2009) (unpublished).

*Rueda-Rivera* is overruled.[5]

2.

Under *Melendez-Diaz*, 129 S. Ct. at 2539,  Martinez-Rios's Sixth Amend-
ment rights were violated.  Blakeway did not testify at Martinez-Rios's trial, de-
spite having prepared the CNR.  The government introduced the CNR through
the testimony of Melendez, who explained how a CNR is ordinarily prepared.
Melendez personally reviewed Martinez-Rios's A-file but did not conduct a
search of any of the computerized databases associated with the CNR.  Mar-
tinez-Rios was unable to cross-examine the person who had prepared a testimon-
ial statement to be used against him at trial.  Therefore, the district court erred
in admitting the CNR without providing the testimony of the records analyst.

B.

Martinez-Rios must also demonstrate that the error was plain and that it
affected his substantial rights.  *See Olano*, 507 U.S. at 732-35.  The parties focus
on the latter inquiry.  To demonstrate that an error affects substantial rights,
a defendant must show "a reasonable probability that, but for [the Confrontation
Clause violation], the result of the proceeding would have been different."[6]  Mar-
tinez-Rios argues that the CNR was the government's only evidence that he had
not obtained consent to reapply for entry into the United States—a fact essen-
tial to his conviction.  The government, citing *United States v. Nutall*, 180 F.3d
182, 188 (5th Cir. 1999), counters that the Confrontation Clause violation was

---

[5] *See United States v. Rodriguez-Jaimes*, 481 F.3d 283, 288 (5th Cir. 2007) ("Absent an
en banc or intervening Supreme Court decision, one panel of this court may not overrule a pri-
or panel's decision.").

[6] *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (quoting *United States v.
Bagley*, 473 U.S. 667, 682 (1985)); *see also United States v. Ochoa-Cruz*, 442 F.3d 865, 867 (5th
Cir. 2006).

No. 08-40809

harmless, because there was otherwise considerable evidence that Martinez-Rios had not sought consent to reapply.

Indeed, the government introduced ample evidence, other than the CNR, to establish that Martinez-Rios lacked permission to reapply. Blanco testified that he observed three individuals hanging onto the outside of a train northbound from Mexico as it pulled into the station, that he discovered Martinez-Rios hiding in the brush, and that Martinez-Rios admitted that he was from Mexico and had "no documents." Mireles testified that Martinez-Rios said he was from San Luis Potosi, Mexico, and had crossed into the United States by wading across the Rio Grande, walking through the brush to the Laredo train depot, and boarding a northbound train. Melendez testified that he personally searched Martinez-Rios's A-file for an I-212 (a form granting permission to enter the United States) but did not find any such document. In the face of all that testimony, even if the CNR was not entered into evidence, there was no reasonable probability that Martinez-Rios would have been acquitted. *See Nutall*, 180 F.3d at 188.

Other courts have held that the introduction of a CNR in violation of the Sixth Amendment is harmless error where additional evidence is sufficient to establish that an alien never obtained the required consent to reapply for entry.[7] We agree; the error in admitting the CNR without the opportunity for confronta-

_____

[7] *See, e.g.*, *United States v. Madarikan*, 2009 WL 4826912, at *2 (2d Cir. Dec. 16, 2009) (unpublished); *United States v. Corona-Rivera*, 2009 WL 3490286, at *2 (S.D. Cal. Oct. 26, 2009) (holding that admission of CNR was harmless beyond a reasonable doubt in light of border patrol agent's testimony that he had searched defendant's A-file and found no application for permission to reenter the United States and alien's admission that he had no immigration documents); *United States v. Diaz-Delgado*, 2009 WL 3384181, at *2 (S.D. Cal. Oct. 16, 2009) (same); *cf. United States v. Salinas-Valenciano*, 220 F. App'x 879, 885 (10th Cir. 2007) ("The CNR was the government's sole evidence to prove that Mr. Salinas-Valenciano never successfully applied for re-entry. Without that evidence, the proof against the defendant is insufficient to sustain the charges.").

9

No. 08-40809

tion did not affect Martinez-Rios's substantial rights.

The judgment of conviction is AFFIRMED.