# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 11, 2010

No. 09-10871

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LANAS EVANS TROXLER,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:05-CR-263-1

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Lanas Troxler was convicted of numerous tax law violations stemming from his involvement in a complex scheme involving Caribbean business entities. On appeal, he claims the district court erred in several of its evidentiary rulings. We find no reversible error and AFFIRM.

## BACKGROUND

Lanas Troxler worked as a financial advisor and provided financial services to several companies. In addition, he marketed a program to investors

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-10871

that reduced or eliminated their taxes by diverting assets from the investors' domestic corporations into business entities set up in the Turks and Caicos Islands in the Caribbean. Troxler operated his own domestic company using these offshore business entities as well.

The IRS began investigating Troxler after discovering he had a large home, several vehicles, and a luxury RV despite claiming little or no income or tax liabilities. Two undercover agents, posing as clients, sought Troxler's services. They later would testify at length about Troxler's tax avoidance operations. On October 12, 2005, a grand jury indicted Troxler on one count of corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue laws, four counts of attempting to evade and defeat tax, and twelve counts of assisting in the preparation and presentation of a false and fraudulent tax return. At trial, Troxler proceeded *pro se* with the assistance of standby counsel. The jury convicted Troxler on all seventeen counts.

Now represented by counsel, Troxler alleges four points of error: (1) his right to confront witnesses was violated when he was prohibited from asking two government witnesses if they felt intimidated by the IRS; (2) his right to confrontation was violated when the government did not call a records custodian when offering into evidence IRS certifications of lack of records; (3) a mistrial should have been granted or testimony stricken due to the government's mid-trial disclosure of a non-prosecution agreement with a witness; and (4) several charts summarizing evidence were improperly admitted.

## DISCUSSION

All four of Troxler's issues on appeal allege error in the admission or exclusion of evidence. A trial court's evidentiary rulings, which may need to be made frequently and even on a rapid-fire basis, are reviewed deferentially. A

2

No. 09-10871

decision to admit evidence will not lead to a reversal of judgment unless the ruling was an abuse of discretion and led to a violation of the party's substantial rights. *United States v. Powell*, 124 F.3d 655, 660 (5th Cir. 1997).

We now apply that standard to each allegation of error.

A.    *Questioning a Witness Regarding Feelings of Intimidation by IRS*

Robert Webb and Curtis Burgess were two of Troxler's clients who set up business entities based in Turks and Caicos. Both testified for the government at trial. During each cross-examination, Troxler asked the witness whether the Internal Revenue Services intimidated him. This is how the questioning proceeded as to Webb:

> TROXLER: Okay. . . . And let me see. I had some other questions. These other questions will be kind of a yes or no. And you don't need to elaborate. And I'll just go quickly — quickly here, because of time. Are you intimidated by the Internal Revenue Service?
>
> GOVERNMENT: Objection, relevancy.
>
> COURT: Sustained.
>
> TROXLER: Have you been offered any deals for immunity from prosecution by the IRS in exchange for your testimony today?
>
> WEBB: No.

Burgess was asked the same question:

> TROXLER: . . . . Let me ask you a few more questions. And these questions require maybe a yes or no, real quickly. And just for the record, I want this to be on the record. Are you intimidated by the Internal Revenue Service?
>
> GOVERNMENT: Object, Your Honor. I object to that question.
>
> COURT: Sustained.

No. 09-10871

TROXLER: Have you been offered any deals or immunity from prosecution by the IRS in exchange for your testimony today?

BURGESS: No.

The sustaining of an objection to the intimidation question is the first issue on appeal, but giving such primacy to the question seems odd in light of the trial transcript. Troxler wanted quick, one-word answers to a series of questions. The government objected that the first question was not relevant. The district court sustained the objection, either agreeing it was not relevant or deciding on some other basis that it was improper. On appeal, Troxler argues the relevance was obvious and central to all cross-examination — the potential biases and pressures that can affect the truthfulness of a witness's answers.

Troxler is making too much out of too little. Error may not be predicated on a district court's ruling to exclude evidence "unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Fed. R. Evid. 103(a)(2). In general, "excluded evidence is sufficiently preserved for review when the trial court has been informed as to what counsel intends to show by the evidence and why it should be admitted . . . ." *United States v. Ballis*, 28 F.3d 1399, 1406 (5th Cir. 1994). However, if the district court was not so informed, then we will not review a challenge to the excluded evidence. *United States v. Akpan*, 407 F.3d 360, 374 (5th Cir. 2005).

On appeal, the government does not argue that Troxler failed to present to the district court an adequate understanding of the purpose of the question. Instead, it relies on the fact that Troxler was able to ask other questions that pursued issues of bias, and that Troxler was not foreclosed from pursuing this line of questioning further despite the sustaining of this single objection. We

4

No. 09-10871

conclude that the more fundamental problem is that the question did not clearly inform the district court of its purpose. When we consider whether a district court's evidentiary ruling is correct, we are not limited by the reasoning of the district court itself or by the appellate arguments of the party defending the ruling. Instead, we can affirm based on any valid reason supporting the ruling. *United States v. Dunigan*, 555 F.3d 501, 508 n.12 (5th Cir. 2009).

Troxler argues that the district court was informed of the purpose of the question by the question itself and by its context. He alleges that by asking Webb and Burgess if they felt intimidated by the IRS, he intended to expose their potential bias. Such clarity in fact did not exist. None of the questions preceding the excluded question involved potential witness bias. Prior to asking the question, Troxler specifically requested a quick yes or no answer, and he told Webb not to elaborate in his answer.

Once the district court sustained an objection based on relevance, Troxler could have explained the purpose of the question, if in fact the grounds argued now were the purpose. In the trial itself, without any elaboration on the purpose from Troxler, this question could reasonably have appeared to be some broad inquiry into the witness's feelings about the IRS. General intimidation by the IRS, or by the federal income tax system, or by the government generally, was not relevant.

We recognize that Troxler proceeded *pro se* at trial. Still, whoever is "representing" a party at trial is subject to the evidentiary rules. Because the district court was not informed as to what Troxler sought to prove by the questioning, the alleged error was not preserved for our review. *Akpan*, 407 F.3d at 374 (citing Fed. R. Evid. 103(a)).

B.     *Second Confrontation Clause Claim*

No. 09-10871

During trial, the government admitted certificates of non-existence of records without providing the testimony of a records analyst. These certificates reflected the absence of any tax returns for the Caribbean business entities created as part of Troxler's scheme. Prior to their admission, Troxler was shown the certificates. When asked by the district court, Troxler responded that he had no objection to their admission.

At the time of trial, the law of this Circuit was that certificates of non-existence of records were not testimonial and did not require accompanying testimony from a records analyst. *United States v. Rueda-Rivera*, 396 F.3d 678, 680 (5th Cir. 2005). Subsequently, the Supreme Court held that records such as certificates of non-existence of records are testimonial. *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2539 (2009). It was error to admit the certificates.

Troxler claims that the admission of these certificates at trial violated his Sixth Amendment right to confrontation. The government argues that Troxler waived this issue since he specifically stated that he had no objections to their admission at trial. The government is incorrect. Waiver occurs when a party intentionally abandons a right that is known. *United States v. Arviso-Mata*, 442 F.3d 382, 384 (5th Cir. 2006). This right was unknown, as the Supreme Court had not yet reversed our prior interpretation by the time of trial. Because there was no objection, though, plain error review applies. *Id.*

We previously considered a similarly timed appeal, in which certificates reflecting the absence of records were introduced at a trial, then the appeal was considered after the *Melendez-Diaz* decision was released. *United States v. Martinez-Rios*, 595 F.3d 581 (5th Cir. 2010). We held that plain error review applied to this forfeited but not waived error. *Id.* at 584. Troxler, then, must

6

demonstrate that the admission of the certificates was an error, that it was plain, and that the error affected his substantial rights. *Id.* Even if he is able to demonstrate all this, the court should reverse only if failing to do so would "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993) (alteration omitted)).

Troxler argues that the plainly erroneous admission of these certificates affected the outcome of the trial, because the exclusion of these certificates may have contributed to reasonable doubt concerning his intent. He argues that the Caribbean business entities's failure to pay taxes was critical to the government's theory that he willfully evaded paying taxes rather than merely misunderstood tax law. Had the certificates been excluded, Troxler argues the government's theory that he intentionally evaded paying taxes would be weakened.

There was no prejudice. The fact that the Caribbean business entities did not pay U.S. taxes was well-established by testimony of the government's witnesses. The certificates were merely cumulative evidence.

Because Troxler has not established that the error of admitting the certificates affected any substantial rights, we will not reverse.

C.    *Denial of Motion to Strike and Motion for a Mistrial*

The next challenged evidence concerns Stacy Faulk. She was an accountant who prepared tax returns for Troxler and his clients. Faulk testified for the government at trial.

Immediately prior to Troxler's cross-examination of Faulk, while the jury was out of the courtroom, Faulk revealed to the district court that her previous attorney had received a letter apparently from the government stating that she was not a target of the investigation and that she would not be prosecuted. This

No. 09-10871

letter's existence was apparently a surprise to both Troxler and the government's counsel. Clarity to who sent the letter and exactly what it said was never given. Faulk told the court that she had not felt comfortable talking with investigators until she had received this letter.

The district court concluded that the government's failure to turn over the letter was a *Brady* violation, and that the letter should have been disclosed to Troxler earlier. Faulk explained that she still had the letter, but that she did not have it in court with her that day. Troxler did not request a continuance so that the letter could be retrieved. He did, however, move to strike Faulk's direct examination in its entirety, or in the alternative, move for a mistrial. The district court denied both motions, but explained that Troxler could question Faulk about the letter. He did so.

The following are the relevant portions of the cross-examination:

TROXLER: Stacey, one last point here. Can you testify that you never got a letter from the government in reference to your offer of testimony today, that you would not be prosecuted?

FAULK: Can I testify that I never got one?

TROXLER: Can you testify that you never got a letter that you would not be prosecuted if — if you testified today?

FAULK: I never got that letter. I got a letter saying I was not a target.

TROXLER: But you never got a letter saying you would not be prosecuted?

FAULK: No. They just told me that I would not be prosecuted.

TROXLER: Is that one reason you have been cautious with your testimony, until you received that and you felt like after that you were free?

8

No. 09-10871

*[Objection overruled.  Faulk asks Troxler to repeat the question]*

TROXLER:  Well, up until the time you got the letter, you hadn't really spoken with anybody from the government very much about the details?

FAULK:  Right.  Because I got an attorney, and he told me not to talk.

TROXLER: Okay. And after you got . . . some kind of a letter, even though it didn't say you wouldn't be prosecuted, is that . . . what gave you an ability to want to come and tell your story today without fear?

FAULK:  I didn't want to come.

TROXLER:  Okay . . . did you even have any have any fear that I could prosecute you?

*[Government's objection is sustained]*

TROXLER:  Or that somebody could prosecute you for — or were you figuring that you were covered because of the deal that the government wanted to make for your testimony.

FAULK:  I didn't think I was going to be prosecuted, no.

TROXLER:  So — because you had the assurance and you felt you were not going to be prosecuted, you were willing to answer those questions, or any questions?

FAULK:  Somewhat.

TROXLER: Do you feel like you had a certain amount of protection and you might have been obligated to answer a certain way because they promised not to prosecute you?
FAULK:  No.

TROXLER:  Or intended ---

9

No. 09-10871

FAULK: No. My intent was to just tell the truth.

TROXLER: Okay. So you've told the truth?

FAULK: Yes.

On appeal, Troxler contends the district court erred in denying his motion for a mistrial and his motion to strike Faulk's testimony. We review each for abuse of discretion. *See United States v. Williams*, 132 F.3d 1055, 1060 (5th Cir. 1998); *United States v. Jennings*, 724 F.2d 436, 445 (5th Cir. 1984).

We recently discussed the effect of a later disclosure of *Brady* material:

> The Supreme Court has never expressly held that evidence that is turned over to the defense during trial has been "suppressed" within the meaning of *Brady*. Our court has held that such evidence is not considered to have been suppressed. In this Circuit, when the claim is untimely disclosure of *Brady* material, we have looked to whether the defendant was prejudiced by the tardy disclosure. We have held that a defendant is not prejudiced if the evidence is received in time for its effective use at trial. These principles that we have applied to claims of untimely disclosure of *Brady* material . . . are consistent with the purpose of the *Brady* disclosure requirement, which is to ensure that the defendant receives a fair trial.

*Powell v. Quarterman*, 536 F.3d 325, 335-36 (5th Cir. 2008) (internal citations, quotation marks, and footnote omitted). From this we conclude that the pivotal issue is whether Troxler learned of the letter in time to use it effectively at trial.

Troxler was able to make the jury aware that Faulk had been unwilling to talk with investigators before receiving the letter. She cooperated only after receiving a letter saying she was not going to be a target of the investigation. Nothing has been presented to us suggesting that the late disclosure of the Faulk letter prevented Troxler from receiving a fair trial.

The district court did not abuse its discretion by denying Troxler's motion to strike and motion for a mistrial.

No. 09-10871

D.    *Admission of Exhibits 67A through E*

Finally, Troxler challenges the district court's decision to allow the government to admit summary evidence in the form of several charts. A specific evidentiary rule provides an opening for the challenged exhibits:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

Fed. R. Evid. 1006. We must decide if the opening was sufficient to allow in these exhibits.

(1)    *Exhibit 67A*

Exhibit 67A is a chart created by the government showing how it believed Troxler's Caribbean business scheme operated. Prior to its being offered, one of the undercover agents testified that the exhibit accurately summarized the manner in which Troxler had his clients set up their operations to evade taxes. The exhibit allegedly was a clearer, printed version of notes that she made during her undercover work. The government gave a copy of this chart to Troxler before it was offered. It was offered and admitted during IRS Special Agent Hampton's direct examination.

During trial, Troxler's stated reasons for objecting to the admission of Exhibit 67A were vague. The following are the relevant portions of the trial transcript concerning the admission of this Exhibit:

> GOVERNMENT: Have you had an opportunity to review Exhibit 67A before?
>
> AGENT HAMPTON: Yes, I have.

11

No. 09-10871

GOVERNMENT: Does that document accurately summarize Mr. Troxler's overseas investment program?

AGENT HAMPTON: Yes, it does.
. . . .
TROXLER: Your Honor, I would like to review that particular chart. That's not the chart that we ever used. That was created by someone else.

COURT: Right. [The government] created it.

    [*Troxler reviews Exhibit 67A*]

TROXLER: Just from the quick review I just saw, I would have to decline or disagree with the way it's presented.

COURT: Okay. But you have to give me a reason.
. . . .
TROXLER: Well, the reason is, is they portrayed it to be a scheme, some kind of scheme that would say you can get your money back and all of that, as if you just call up and say I want my money back. But every time I was in the Caribbean, no banker would talk to me. And so I don't think that it's that easy.
. . . .
TROXLER: Your Honor, this — this chart does not reflect or explain anything about the relationship of ownership. I mean, the relationship of who's who.

COURT: All right. Overrule —
. . . .
TROXLER: It looks a little deceptive, because it looks like the money is the issue. And the issue is ownership and control, obviously.

COURT: I'm going to overrule your objection. And that would mean that Government's Exhibit 67 A is admitted into evidence.

On appeal, Troxler suggests several specific reasons why this chart was inaccurate and should not have been admitted. He contends that the chart

12

No. 09-10871

inaccurately "represented the return of money to the United States via debit card, a mechanism that none of [Troxler's] actual clients testified they had used." He also argues the chart was inaccurate, because it included a depiction "of a 'firewall' between [Troxler's] overseas companies, when no evidence showed any difficulty on the part of the government in acquiring overseas records." In addition, he contends the chart was inaccurate, because it generally represented "the function of the companies without reference to their official managing director." Finally, he argues the chart was admitted prior to admission of some of the evidence supporting the chart.

The district court had asked Troxler for explanations such as this prior to its ruling. Such arguments were not then made. Whatever merit they may have, and we reach no decision as to that, these objections were never argued before the district court. When no objection is made, Troxler must show the admission was error that was plain and affected his substantial rights. *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009). There has been no showing of error, much less a plain one that had the necessary effect.

### (2) *Exhibits 67B through 67E*

Exhibits 67B through E are charts created by the government showing what it believed to be the structure of the business entities used by Troxler and several of his clients. The record indicates the government gave copies of these charts to Troxler before they were offered. They were offered and admitted during IRS Special Agent Williams's direct examination.

On appeal, he challenges admission of these exhibits on the ground that there were selective omissions. Specifically, he contends that "[b]y omitting any reference to Mr. Morris as a key player in these entities, the [charts portray] the entire structure as simply a means to return the clients' money to them, without respecting the corporate identities that were created."

13

No. 09-10871

Again, Troxler raised only a very general objection to the admission of these charts at trial:

> TROXLER: Your Honor, I object.  It's — it's mostly demonstrative aid.  It's not evidence that should be admitted.
> . . . .
> COURT: Have you looked at [Exhibits 67 B, C, D, and E], Mr. Troxler?
>
> TROXLER: Yes, sir.
>
> COURT: You have the same objection on each of them?
>
> TROXLER: Yes, sir.
>
> COURT: All right.  Overrule your objection.

Troxler never mentioned to the district court that he objected to the fact that Morris's alleged role in the scheme was not included on the charts.  Troxler has not demonstrated that reversal is warranted under the plain error standard.

### (3)    Agents' Testimony Concerning Charts

For the first time on appeal, Troxler claims that Agents Hampton and Williams provided impermissible summary testimony concerning these charts during their direct examinations.  Again, plain error is the standard.

The testimony of these witnesses was cumulative to other evidence.   At worst, their testimony was harmless error. *United States v. Okoronkwo*, 46 F.3d 426, 435 (5th Cir. 1995).

AFFIRMED.