# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 21, 2013

No. 12-30922

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JOHN WYSS, also known as Bones,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:10-CR-319-16

Before OWEN and HAYNES, Circuit Judges and LEMELLE, District Judge.[*]
PER CURIAM:[**]

Defendant-Appellant John Wyss appeals his conviction and life sentence for engaging in a child exploitation enterprise in violation of 18 U.S.C. § 2252A(g).

Wyss contends his Sixth Amendment Right of Confrontation was violated by the admission at trial of certain Internet Protocol address data ("IP") and

---

[*]District Judge of the Eastern District of Louisiana, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30922

testimony about that data from a records custodian from Sprint - Nextel Telecommunications' legal compliance department ("Sprint").[1]  He also contends erroneous admission of opinion testimony from the government's computer forensic expert invaded the jury's fact-finding role.  Lastly, Wyss challenges his life sentence because the sentencing judge pronounced an unreasonable sentence and impermissibly relied upon  redundant upward adjustments based on age of the children, use of a computer and engaging in a pattern of activity involving exploitations of a minor.  For the following reasons, we AFFIRM the conviction and sentence.[2]

## I.  Facts and Proceedings

The key issue at trial was whether Wyss properly was identified as the person, using the screen name "Bones", who published child pornography onto an internet bulletin board known as "Dreamboard".[3]

As a result of search warrants executed at Dreamboard's host entity, Certified Hosting Solutions, the government seized the hard drives for

---

[1] "An [IP] address is a unique 32-bit numeric address, written as numerals separated by periods, identifying each sender or receiver of information traveling across the Internet.  An IP address has two parts: the identifier of a particular network on the Internet (say, the first 24 bits) and an identifier of the particular device (which can be a server or a workstation) within that network.  In essence, an IP address identifies a single computer...." *White Buffalo Ventures, LLC v. University of Texas at Austin*, 420 F.3d 366, 369 n. 6 (5th Cir. 2005).

[2]  Wyss was also found guilty for violating 18 U.S.C. §2251(d)(1)&(e), conspiracy to advertise the distribution of child pornography, and violating 18 U.S.C. §2252A(a)(2)(A)&(b)(1), conspiracy to distribute child pornography. However, the district judge vacated those convictions upon oral motion of the government prior to sentencing.

[3]  Dreamboard is a highly encrypted, members-only, internet bulletin board that promotes members to produce, advertise and share pornographic images and videos of child sexual abuse, including links to an approved, password protected, third-party website for downloading.

No. 12-30922

Dreamboard's servers. Stored IP addresses were obtained from the servers. With those addresses the government's computer forensics specialist, James Fottrell, was able to determine the names of Internet Service Providers, such as Sprint for each IP address. Subpoenaed records from Sprint allowed Fottrell and other government investigators to identify John Wyss, at a specified address in Monroe, Wisconsin, with an assigned network access identifier "JWYSS14" as the person who posted child pornography on Dreamboard using the name "Bones". Prior to execution of warrants at the latter address, Wyss's half-sister Teresa Dampier was informed by her live-in friend Jerry Dahlen, a member of the Monroe, Wisconsin police department, that her brother was in trouble again and that federal agents were planning to search their residence. Dampier relayed that information to Wyss who denied knowing the reasons for agents' interest in him. Dampier and Dahlen confirmed that Wyss received mail at their residence, but lived in the sleeper compartment of his tractor-trailer. Wyss's location was subsequently determined through a court order to Sprint. That order authorized agents to obtain cellular tower location information used by Wyss's cellular telephone to connect to the Internet.

Wyss was arrested and a search warrant was executed of his tractor-trailer at a border checkpoint north of Laredo, Texas. Among various items seized during the search of the sleeper compartment and admittedly owned by Wyss, agents found a Gateway laptop computer with a hard drive that was completely empty, a Sprint cellular telephone, three Sprint aircards that Wyss admitted using to access the Internet, an empty box for a Toshiba laptop computer, a power cord that did not fit the Gateway laptop, a product key for a Toshiba laptop, and a DVD with the image of a child, nude from waist up, and

3

containing the word "Lolita".  After receiving his "Miranda" rights Wyss orally agreed to speak to agents.  He denied involvement with child pornography and membership in an internet bulletin board.  While denying ever using the screen name Bones, he did admit to visiting other interest websites that corresponded with online activities and postings by Bones.

Subsequently during a series of jailhouse discussions with his cellmate, Wyss admitted that he used the name Bones on Dreamboard, describing his and other members use of that internet bulletin board.  Wyss further admitted that he destroyed certain incriminating evidence of child pornography before his arrest due to suspicion that he was under investigation.  The cellmate, Michael Biggs, was a Dreamland member who testified against Wyss pursuant to a plea agreement.  At the time of providing testimony Biggs had already received a 240 month sentence, the statutory minimum for engaging in a child exploitation enterprise.  Over defense objections, Sprint's custodian of records gave testimony to authenticate records of IP addresses, data usage and customer subscriber information.  He further explained that the records were maintained by Sprint for billing purposes.  The government's computer forensics expert Fottrell testified how he linked the IP addresses and data used by Bones on Dreamboard's servers to the IP addresses  and data assigned to Wyss's Sprint account records.

In addition to evidentiary objections made during the trial based on foundation as  to the admissibility of  Sprint's records and opinion testimony on the ultimate issue of Bones' identity, Wyss filed an opposition memorandum based on the Confrontation Clause to the government's motion *in limine*.  That motion sought a pretrial ruling on the admissibility of the Sprint IP addresses

No. 12-30922

and data that formed the basis, in part, for the noted opinion testimony. The trial court deferred ruling on the motion *in limine* until trial and ultimately overruled objections at trial.

## II.  Analysis

### A.  Wyss' Confrontation Clause Challenge

### 1.    Standard of Review

A Sixth Amendment Confrontation Clause Challenge is reviewed *de novo* if made in the district court and for plain error if it was not challenged in the district court.  *See United States v. Acosta*, 475 F.3d 677, 680 (5th Cir. 2007). Here, Wyss expressly asserted his Confrontation Clause challenge to the Sprint IP records in a written memorandum in opposition to the government's motion *in limine*, as seen above.[4] We will review this issue *de novo*, with any error being subject to the harmless error analysis.  *See United States v. Cantu-Ramirez*, 669 F.3d 619, 631 (5th Cir. 2012), *cert. denied*, 132 S.Ct. 2759, 183 L. Ed 2d 628 (2012).

### 2.    Applicable Law

The Confrontation Clause ensures that an accused has the right to "be confronted with the witnesses against him." U.S. CONST. Amend VI; *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  A violation of the Confrontation Clause occurs upon the admission of "*testimonial* statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Id.*

---

[4] The government argues that plain error review should apply because Wyss did not specifically identify the Confrontation Clause as the basis for his trial-court objection.  We need not decide this question because Wyss's argument fails even under the less deferential standard of review.

No. 12-30922

at 53-54 (Emphasis added). The relationship between qualification for one of the standard hearsay exceptions and exemption from the Confrontation requirement is not a casual one. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 2539-2540, 174 L.Ed.2d 314 (2009). Hearsay law exempts business records because businesses have a financial incentive to keep reliable records. *See* Fed. Rule Evid. 803(6). The Sixth Amendment also generally admits business records into evidence, but not because of their reliability under hearsay law. Business records are admitted because - having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial - they are not weaker substitutes for live testimony. *Melendez-Diaz*, 129 S.Ct. at 2539-2540.

The *Crawford* Court described a testimonial statement as "'[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact,'" a description which includes "statements that are made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *See Brown v. Epps*, 686 F.3d 281, 286-87 (5th Cir. 2012). This Court must determine whether the Sprint records are more akin to testimony or to an ordinary business record that was not prepared for litigation purposes. *See United States v. Martinez-Rios*, 595 F.3d 581, 585-6 (5th Cir. 2010) .

**3.    Discussion**

Wyss asserts that Sprint's IP address records are testimonial in nature because they were produced by a representative from Sprint's legal compliance department who did not personally retrieve the data, in response to a trial subpoena. Wyss cites in support decisions by the United States Supreme Court

No. 12-30922

in *Melendez-Diaz v. Massachusetts*, *supra*, and *Bullcoming v. New Mexico*, ___ U.S. ___, 131 S.Ct. 2705, 180 L.Ed. 2d 610 (2011).  Under Wyss's theory a document kept in the regular course of business would become inadmissable if the document was later offered at trial in response to court order or subpoena. He posits that viewpoint, in part, upon the fact that the IP records were produced as evidence for trial by Sprint's legal compliance department, a department that regularly produces corporate records in response to legal process or litigation needs of parties.  He claims the testimonial purpose of the records is also shown by their continued maintenance for this litigation.  Wyss's argument and reliance upon factually distinguishable legal authorities fail.  As stated above, the primary purpose for creation of the Sprint records is still customer billing.

Unlike laboratory certificates created for use at trial to prove cocaine of a certain weight in *Melendez-Diaz* and a surrogate analyst who did not perform the blood-alcohol tests to prove blood alcohol content in *Bullcoming,* Sprint did not create or maintain IP addresses and data within its corporate records for purposes of litigation or as evidence of customer usage to exploit children. Rather, the trial record objectively establishes the true nature and intended purposes for these records.  Sprint's records custodian testified that the records were kept to identify customers for billing purposes.  He was cross-examined to test that characterization.  The fact that they were used in this prosecution neither changes their characterization as routine business records nor their primary purpose in the regular administration of Sprint's business affairs. Lastly, Sprint's  designation of someone from its legal compliance department as custodian of records does not thereby convert the records into being

"exclusively generated for use at trial". *United States v. Martinez-Rios*, 595 F.3d 581, 586 (5th Cir. 2010) .

## B.  Opinion Testimony Challenge

Wyss asserts violations of Federal Rules of Evidence 702 and 704 occurred when the district court, over his timely objection, impermissibly allowed the government's computer forensic expert to opine that Wyss is the same person who participated on Dreamboard using the name Bones.  He further argues that the erroneous admission of that testimony gravely affected his substantial rights to a fair and impartial trial.  The prosecution counters that there is no showing of an abuse of discretion because the expert was accepted as a computer forensic expert, sufficient reliable evidence of record formed the basis for his opinion, and that it did not embrace Wyss's mental state or condition.

We review evidentiary rulings for an abuse of discretion, and in the event of error, we will affirm provided the error is harmless.  *See United States v. Valencia*, 600 F.3d 389, 416-17 (5th Cir. 2010).  While "review of evidentiary rulings is heightened in a criminal case," *United States v. Gutierrez-Farias*, 294 F.3d 657, 662 (5th Cir. 2002), to obtain reversal, the appellant "must demonstrate that the district court's ruling caused him substantial prejudice." *United States v. Bishop*, 264 F.3d 535, 546 (5th Cir. 2001).

An expert witness my testify at trial if his/her "scientific, testimonial or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid.  702.  Further, an expert may testify "in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data; (2) the testimony is a product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to

the facts of the case." *Id.* An expert "opinion is not objectionable just because it embraces a ultimate issue". Fed. R. Evid. 704. An expert in a criminal case may not, however, offer "an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact along." *Id.*

In the instant case we perceive no error. Testimony from the government's computer forensic expert, Fottrell, was based on examination and comparisons of Wyss's Sprint records, IP addresses and data assigned to him on certain dates and times, along with data retrieved from the Dreamboard servers showing the IP addresses and data that correspond to postings by Bones. Without objection during his direct examination, the expert explained how he identified the use of Wyss's Sprint internet account to post messages on Dreamboard under the name of Bones on multiple occasions during relevant periods of time. Testimony also showed there was only one Dreamboard member using the name Bones as an identifier.

Cross examination of the expert sought to shift responsibility for Dreamboard postings away from Wyss to the possibility of technical manipulation of his computer by others, including third party access to control his computer, in order to make Dreamboard postings. On re-direct examination, over defense objection, and in response to the defense proffered possibilities of technical manipulation, the expert stated he "believed that John Wyss, Sprint customer, is Bones on Dreamboard." As stated before, that conclusion was based on linking up Dreamboard activity with Wyss's Sprint account usage. At that point and upon counsel's request, the district court admonished the jury on the use of expert testimony. While the instruction was neither the full pattern

No. 12-30922

instruction nor an objected-to charge on how to treat expert testimony, the ultimate jury instructions given at the end of trial gave the complete explanation. We discern no substantial harm in the latter regards.

Even assuming errors from the opinion testimony, it was harmless error in light of the remaining overwhelming evidence, which was discussed above. Wyss acknowledges that prior to the opinion given during redirect examination, the expert provided the jury with adequate information to reasonably decide whether Wyss operated under the online screen name "Bones". In additional consideration of all other evidence in the light more favorable to the prosecution and due deference to the jury's verdict, we agree.

## C. Sentencing Challenge

Without benefit of the sentencing transcript or designated portions thereof, Wyss asks this court to find the life sentence imposed by the district court is greater than necessary to meet sentencing factors under 18 U.S.C. § 3553(a) and is therefore unreasonable. He directs us to portions of the trial transcript and the Presentence Report (PSR) to argue against: (1) a five-level upward adjustment for posting 600 or more pornographic images of children; and (2) redundant upward adjustments based upon ages of the children, the use of a computer and engaging in a pattern of activity involving the exploitation of a minor. The government responds that Wyss's failure to designate the transcript of the sentencing hearing as part of the appellate record would allow this court to decline consideration of the sentencing challenge. Alternatively, the government urges rejection of Wyss's sentencing challenge for failure to show either plain error in calculating the sentencing guidelines range or substantive unreasonableness.

No. 12-30922

In adopting the factual representations and guideline recommendations contained in the PSR, the Statement of Reasons ("SOR") shows the district court made changes in the guideline calculations in response to the government's oral motion to vacate two of the three counts of conviction. Instead of the PSR recommended Total Offense Level 47 that resulted from grouping all three counts of conviction together to produce the highest offense level, the district court determined Total Offense Level 43 to be the applicable level for the remaining count of conviction, Engaging in a Child Exploitation Enterprise.

United States Sentencing Guidelines ("U.S.S.G.") § 2G2.6 is the applicable guideline section for the remaining count of conviction under 18 U.S.C. § 2252A(g) for Engaging in a Child Exploitation Enterprise. Under this guideline, the base offense level is set at 35. There are four Specific Offense Characteristics which addresses (1) age of the victim, (2) defendant's relationship to or control over the victim, (3) if the offense involved aggravated sexual abuse, e.g. use or threatened use of force against a minor, and (4) if a computer or interactive computer service was used in furtherance of the offense. U.S.S.G. § 2.G.2.6 (a)(b)(1)(2)(3)&(4). The only prohibition on double counting included in § 2G2.6 pertains to the § 2G2.6(b)(2) enhancement, which is applicable if the offense is committed against the defendant's child or a child under the care, custody or control of the defendant. If that enhancement is applied, the Application Notes expressly prohibit application of the § 3B1.3 enhancement for abuse of a position of trust. U.S.S.G. § 2G2.6, Application Note 2(B). However, that enhancement was not applied here. For the instant offense and based on the trial evidence, Wyss's base offense level 35 was subject to a 4 level increase because many of his victims had not attained the age of 12 years, plus 2 levels for computer usage,

11

No. 12-30922

and another 2 levels for obstructing justice by destroying material evidence through wiping one computer memory drive clean and destroying another computer. It thusly appears that the district court's use of a Total Offense Level 43 resulted from the foregoing adjustments to the base offense level.[5] The appellate record is devoid of any objections made in the district court to the district court's guideline calculations or to the PSR.

"The failure of an appellant to provide a transcript is a proper ground for dismissal of the appeal." *Recover Edge L.P. v. Pentecost*, 44 F3d 1284, 1289 (5th Cir. 1995) (quoting *Richardson v. Henry*, 902 F.2d 414, 416 (5th Cir. 1990) (dismissing appeal based on sufficiency of the evidence because appellant failed to include a transcript)). However, the decision to dismiss based on lack of a transcript is within our discretion. *See Coats v. Pierre*, 890 F.2d 728, 731 (5th Cir. 1989) (noting that the Court of Appeals has discretion in fashioning a response to the failure to include the transcript on appeal, and that dismissing the entire appeal is a drastic remedy to which we should rarely resort). Regardless of Wyss's failure to provide the sentencing transcript, we can affirm the judgment below, because Wyss fails to establish plain error or substantive unreasonableness for the sentence based on the record before us.

A sentence imposed within the Guideline range is entitlted to a rebuttable presumption of reasonableness. *United States v. Rodriguez*, 660 F.3d 231, 233 (5th Cir. 2011) (citing *Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed. 2d 445 (2007))); *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006).

---

[5] Arguably, but not applied in this case, U.S.S.G. § 2.G2.6(b)(3) would also allow a 2 level increase for offense conduct that cause aggravated sexual abuse against minors. The PSR and trial evidence establish that many of Wyss's minor victims were subjected to sadistic and masochistic conduct which he caused minors to produce and which he posted on the Dreamboard bulletin board.

No. 12-30922

"'If the sentencing judge exercises her discretion to impose a sentence within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines.'" *Alonzo*, 435 F.3d at 554 (quoting *United States v. Mares*, 402 F.3d. 511, 519 (5th Cir. 2005)); *see also United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009). Wyss can rebut the presumption "only upon a showing that the sentence does not account for a factor that should receive significant weight, gives significant weight to an irrelevant or improper factor, or represents a clear error of judgment in balancing sentence factors." *Cooks*, 589 F.3d at 186 (citing *United States v. Nikonova*, 480 F.3d 371, 376 (5th Cir. 2007)).

In a case involving a conviction under 18 U.S.C. § 2244(a)(1) and sentence under § 2A3.4(a) of the guidelines for sexual acts with minors under the age of 12, Wyss correctly notes that this court rejected in *dicta* an age-based enhancement of the base offense where the age of the victimized child was found already incorporated into the base offense level relevant to that conviction. *United States v. John*, 309 F.3d 298, 305-306 (5th Cir. 2002). However, that form of double counting did not occur in determining Wyss's base offense level. Wyss's offense of conviction under 18 U.S.C. § 2252A(g) and sentence under guideline provision § 2.G2.6 were different statutory and guideline provisions from those addressed in the *John* opinion. As noted earlier, Wyss's enhancement for age of the victimized children was not factored into the relevant base offense level. See U.S.S.G. § 2.G.2.6 (a). Further, there is no prohibition to double-counting for age of the victim in § 2.G.2.6(b)(1). With only one non-applicable prohibition discussed earlier, to the extent double-counting may have occurred Wyss fails to show, and we do not find, either a prohibition to double-counting for his offense

13

No. 12-30922

conduct by the applicable sentencing guidelines or an intention by the framers to impose one.

As stated by this court in a related case arising from this same prosecution, "Since computer usage was not required by the statutes of conviction in this case, see 18 U.S.C. §§ 2251(d), 2252A(g)(2), Deschenes's computer usage was not already factored into the base offense level in § 2G2.6(a)." *United States v. Deschenes*, 2013 WL 829032 (5th Cir. 2013) (unpublished opinion). Similarly, Wyss's argument for application of the *dicta* found in the *John* opinion, relative to victim age and computer usage enhancements, is rejected. Further, double-counting is prohibited only if the relevant guidelines expressly forbids it, and §§ 2.G.2.6(b)(1) & 2G2.6(b)(4) contain no such prohibition. *See Untied States v. Calbat*, 266 F.3d 358, 364 (5th Cir. 2001); *Deschenes, supra.*

Wyss's argument against considering as a factor for sentencing the more than 600 pornographic images of children fails in view of record testimony from the computer forensic expert. That testimony linked Wyss with making 778 postings to Dreamboard, including 144 posts to its video forum known at "PT-Vids" showing videos of girls 13 and younger as well as posts of "web cam" videos of nude girls exposing their genitals and masturbating. Wyss was required to submit 50 megabytes of child pornography to become a member of Dreamboard. Expert testimony explained 50 megabytes was the equivalent of 2,000 and 4,000 still images or 50 minutes of video. One video is the equivalent of 75 images and if the video is substantially more than 5 minutes, the guidelines suggest basis for an upward departure. U.S.S.G. § 2.G2.2, Application Note 4. Further, Wyss may also be held accountable under relevant

conduct for images posted by fellow Dreamboard members where evidence showed members, including Wyss, actively shared child pornographic images with each other.  *See* U.S.S.G. § 1B1.3(a)(1)(B).

In  addressing the substantive reasonableness of a sentence, this reviewing court has considered the totality of the circumstances, granting deference to the district court's determination of the appropriate sentence based on factors under 18 U.S.C. § 3555(a).  *United States v. McElwee*, 646 F.3d 328, 337 (5th Cir. 2011).  The SOR shows the guideline changes made by the district court and an express statement therein that the Life sentence was selected as the most reasonable sentence after considering the factors in § 3553(a).

Finding no record evidence rebutting representations found in the PSR, the government's sentencing memorandum, the SOR or the trial record, the district court was entitled to consider the information presented in determining the sentence. *See United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998).  The record does not reflect and Wyss fails to show that the district court failed to take into account a factor that should have received significant weight, that it gave significant weight to an irrelevant or improper factor, or that it made a clear error in balancing the § 3553(a) factors. *See United States v. Smith*, 440 F.3d 704, 708 (5th Cir. 2006).  Wyss fails to rebut the presumption of reasonableness that is accorded this with-in guidelines sentence. *See*, *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009).

The judgment of the district court is AFFIRMED.